**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Julian PEREZ, Defendant-Appellant.
No. 16536.**

United States Court of Appeals
Seventh Circuit.
July 31, 1968.

Max Cohen, Gary, Ind., for appellant.

Alfred W. Moellering, U. S. Atty., Joseph F. Eichhorn, Asst. U. S. Atty., Fort Wayne, Ind., for appellee.

Before CASTLE, Chief Judge, HASTINGS, Circuit Judge, and KNOCH, Senior Circuit Judge.

KNOCH, Senior Circuit Judge.

Julian Perez, defendant-appellant, and two co-defendants were indicted on a charge of bank robbery in violation of Title 18 U.S.C. § 2113(d) in that on November 20, 1961 by force and violence they took a sum in excess of $69,000 belonging to a bank whose deposits were insured by the Federal Deposit Insurance Corporation, in the course of which they assaulted two persons whose lives they put in jeopardy by use of a pistol. The indictment was returned June 23, 1965; an information was filed in April 1965.

In December 1965 one co-defendant, Jesse Paramo, pleaded guilty. Shortly thereafter the second co-defendant, Manuel Zurita was tried and found guilty.

The defendant-appellant was serving a sentence in the Arkansas State Penitentiary when the information was filed. In June 1965 a federal warrant was served on him there. On his release from the Arkansas State Penitentiary on March 10, 1967 he was taken in custody and returned to the Northern District of Indiana to answer this charge. After a jury trial he was found guilty and sentenced to serve twenty years.

The sole error charged is denial of defendant's motion to dismiss based on alleged denial of a speedy trial by failure of the government to take affirmative action to bring him to trial earlier.

The sufficiency of the evidence to sustain a conviction is not questioned. There was evidence that the three defendants obtained entry to the home of the bank manager on a pretense of being deputy sheriffs, that they held him and his wife captive all night, that in the morning appellant and Zurita forced the bank manager to open the vault and night depository and left him in the bank bound to a pipe. The third co-defendant Paramo testified that he remained in the bank manager's home for about fifteen minutes with the wife and then left.

Appellant contends that he was prejudiced by the delay in trial. He did not testify. Evidence was offered to show he was at work on the day of the robbery November 20, 1961, a Monday. His wife testified that he was at home the night of November 19, 1961, a Sunday night, because he had never stayed away all night at any time since they were married. She said he always worked on Mondays because Tuesday was his day off during the week in 1961.

Appellant argues that he was deprived of the helpful testimony of witnesses who at the time of the trial were no longer available (none such are mentioned, however) or whose recollection had become obscure.

Two fellow employees testified that they thought that Tuesday was the appellant's day off in 1961 but neither could remember positively because of the lapse of time. A work record showed that appellant worked forty hours during a period which included Monday, November 20, 1961, but it did not indicate which days he worked.

It is mere conjecture that these witnesses would have had clearer recollections in December 1965 and would have given more compelling testimony. On rebuttal F.B.I. Agent Rene J. Dumaine testified to a contemporary record of a statement by one of those witnesses, Albert Specht, the cashier where appellant worked, who on October 21, 1963, said that Monday was the appellant's regular day off. At the trial Mr. Specht did not recall making that statement. A partner in the concern, Mitchell Obuchowski on a later occasion had first told Agent Dumaine that appellant's day off was Tuesday, and then had come back after a conversation with Edward Rzeznick, another employee (who testified at the trial) and told Agent Dumaine that it was Monday. We find no indication of

any substantial prejudice resulting from the delay, as claimed.

Appellant complains that he was deprived of his eligibility for parole in Arkansas because of the federal detainer placed against him. As noted in the colloquy at the time of passing sentence, there is no assurance or even indication from the record that appellant would have been paroled in the minimum time had the hold order not been on file.

■ Appellant contends further that he was deprived of the possible benefit of having the Trial Judge order the federal sentence to run concurrently with the Arkansas sentence. However the Trial Judge in this case commented on this point in passing sentence and clearly stated that he was taking this factor into consideration and was giving appellant full credit for the time served in Arkansas.

■ Both parties cite United States v. Simmons, 2 Cir., 1964, 338 F.2d 804, where the Court (at page 807) set out four relevant factors for consideration of a claim that speedy trial under the Sixth Amendment was denied: (1) length of delay, (2) reason for delay, (3) prejudice to defendant, and (4) waiver, if any.

In June 1964, co-defendant Paramo, while hospitalized for a period of about a year in a tuberculosis hospital, made a confession implicating the other two co-defendants, and was arrested on release from that hospital in April 1965.

It is apparent from the testimony of the bank manager and from that of Special Agent Dumaine that the federal agents and the local police were engaged, continuously from the date of the crime, in efforts to identify the offenders. The confession of Paramo was a turning point in the investigation but did not in itself terminate that investigation.

The District Court spoke of his own recollections of the Zurita trial and said that the delay could not be charged to the government because of lack of "sufficient identity and evidence" to warrant earlier indictment.

Appellant contends that the State of Arkansas could not have refused to deliver him on a writ of habeas corpus ad prosequendem obtained in a federal court. Assistant United States Attorney Richard F. James in his affidavit described two telephone conversations early in November 1965 with the Warden of the Arkansas Penitentiary (in his efforts to secure appellant's presence for trial in the District Court in December 1965) in which the Warden specifically stated that the Arkansas authorities would not comply with such a writ.

The Arkansas statutes quoted by appellant, reading in part:

A person committed to prison in custody of an officer, for any criminal offense, shall not be removed from said prison or delivered to the custody of any other officer, except in the following cases: By writ of habeas corpus, or some other legal writ: When he *may be* delivered to an officer, to be removed to some common jail * * *. Arkansas Statutes 43–2607

\* \* \* \* \* \*

If a criminal prosecution has been instituted against such person under the laws of this State and is still pending, the Governor *at his discretion* either may surrender him on demand of the Executive Authority of another state or may hold him until he has been tried and discharged, or convicted and punished in this state. Arkansas Statutes 43–3019 [emphasis added]

all show language which is permissive in nature and not obligatory.

In Strand v. Schmittroth, 9 Cir., 1957, 251 F.2d 590, at page 599, cert. dism. 355 U.S. 886, 78 S.Ct. 258, 2 L.Ed.2d 186, the Court said:

Where the body of the accused is in manual possession of one sovereign, surrender can be obtained by another such sovereign only by consent of the first or by force. The latter is unthinkable.

In United States ex rel. Moses v. Kipp, 7 Cir., 1956, 232 F.2d 147, 150, Judge Duffy speaking for this Court, said:

> The United States District Court for the Northern District of Illinois could not have compelled the State of Michigan to surrender Moses after he had been incarcerated in that state for violation of a Michigan law. In spite of the terminology of the writ, the consent of Michigan authorities was necessary to obtain the custody of Moses.

The Court in Strand v. Schmittroth, supra, 251 F.2d at page 610 quoted with approval the opinion in Vanover v. Cox, 8 Cir., 1943, 136 F.2d 442, 443–444, cert. den. 320 U.S. 779, 64 S.Ct. 93, 88 L.Ed. 468:

> A person who has violated the criminal statutes of both the federal and a state government may not complain of the order in which he is tried or punished for such offenses. The interested sovereigns may arrange the order of trial and punishment according to their convenience.

See also Stamphill v. Johnston, 9 Cir., 1943, 136 F.2d 291, 292, cert. den. 320 U.S. 766, 64 S.Ct. 70, 88 L.Ed. 457.

■ Although the appellant asserts that the sole information given him by the Federal Bureau of Investigation agents while he was in the Arkansas Penitentiary related to his right to plead guilty and be sentenced by the Court in Little Rock, Arkansas, he was fully aware that he had been indicted. Appellant argues that he should not be considered to have waived his right to a speedy trial. He urges that the harsh rule of United States v. Lustman, 2 Cir., 1957, 258 F.2d 475, 478, cert. den. 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (that no valid claim of denial of the right to a speedy trial may be asserted unless the defendant has made a demand for trial) ought to be ameliorated. He refers to the trend toward requiring available advice of counsel in more and more instances and the disfavor in which Courts hold long delays in bring-

ing incarcerated prisoners to trial. We have considered all the cases and authorities cited by counsel, but conclude that the circumstances of the case before us do not justify abandonment of the established rule. We share the view of the Court in United States v. Maxwell, 2 Cir., 1967, 383 F.2d 437, 441, cert. den. 389 U.S. 1043 and 1057, 88 S.Ct. 786, 809, 19 L.Ed.2d 835, 856, which stated:

> Aware that their claims are barred under *Lustman,* appellants invite us to abandon the so-called demand rule which we have consistently applied in a constantly lengthening line of cases. [citing cases] We decline the invitation, however, because the reasoning of *Lustman,* that the demand rule is consonant with the bulk of federal authority and preserves the speedy trial right as a shield for the defendant's protection but not as a sword for his escape, is still to us persuasive.

The judgment of the District Court is affirmed.

Affirmed.