(No. 41661.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.* MILES D. TETTER, Appellee.

*Opinion filed June 20, 1969.*

WARD, J., took no part.

John J. Stamos, State's Attorney, of Chicago, (James B. Zabel, Assistant State's Attorney, of counsel,) for the People.

Arthur J. O'Donnell, of Chicago, for appellee.

Mr. Chief Justice Solfisburg delivered the opinion of the court:

The circuit court of Cook County dismissed, on motion of defendant, Miles Tetter, the indictment charging him with armed robbery for failure to provide defendant with a speedy trial as guaranteed under the State and Federal constitutions. The People originally appealed to the appellate court, but on motion, joined in by defendant, the cause was transferred to this court.

The issue is essentially whether the indictment should be dismissed on the grounds that defendant was denied his right to a speedy trial under section 9 of article II of the Illinois constitution, and under the sixth and fourteenth amendments of the United States constitution.

The facts are largely undisputed. It appears that on July 26, 1966, defendant, Miles Tetter, was arrested for armed robbery and held in custody in the Cook County jail. On August 31, 1966, defendant's family deposited $300 for his $3,000 bail. Defendant was not released, however, but was delivered by the sheriff of Cook County to the military police, pursuant to a military detainer previously lodged against defendant at the Cook County jail. The military police who took custody of defendant signed a record of that fact at the county jail. On September 14, 1966, the grand jury returned the indictment against defendant on the armed robbery charge. At the arraignment on September 27, 1966, defendant did not appear.

The report of those proceedings recites that a co-defendant stated that defendant was at the Great Lakes Naval Center. The assistant State's Attorney explained that when the matter came up the week before, September 20, the co-defendant had made a similar statement, and that when the assistant State's Attorney telephoned the Great Lakes Naval Center, he was told by the director of personnel that there was no one there by the name of Miles Tetter. The court, after inquiry about any alias of Miles Tetter, then declared forfeiture of defendant's bond. Notices of such bond forfeiture were sent by the State's Attorney's office to defendant's home address at 1429 Wallace, Chicago Heights, on September 27 and again on October 28, 1966. The naval records indicate, however, that defendant was in fact at the Great Lakes Naval Center, at least until September 30, 1966, and at some later date was transferred to the custody of the Navy Disciplinary Compound at Portsmouth, New Hampshire, for 6 months.

On October 5, 1966, the chief deputy bailiff sent an arrest warrant for defendant to the Naval authorities at Great Lakes, requesting that it be lodged as a detainer against defendant, and that the sheriff's office be notified when defendant was available. On October 6, 1966, the sheriff's office issued a national stop order for defendant, requesting that he be taken into custody, and indicating the existence of the indictments for armed robbery and bond forfeiture, as well as willingness of the State to undertake extradition.

Sometime in October or November, 1966, defendant allegedly wrote to the chief justice of the criminal court of Cook County, advising him that defendant's family received a letter from the court concerning his State trial and that defendant was in custody of the commanding officer of the United States Navy Disciplinary Compound at Portsmouth, New Hampshire. No such letter, copy, or testimony concerning it, was ever offered in evidence.

On February 27, 1967, defendant was released from

Federal custody and discharged from the Navy. He apparently resumed residence in Chicago. Heights with his family. The following month defendant was arrested by Federal authorities on a charge involving checks, and was released from custody on his individual bond. On January 11, 1968, the Federal district court placed defendant on 2 years' probation after he pleaded guilty. Defendant claims he first learned of the bail jumping charge from his probation officer.

Defendant was arrested in Chicago Heights on February 20, 1968, and the following day the armed robbery indictment was reinstated, and the State's Attorney after viewing the county jail records *nolle prossed* the bail jumping indictment. On March 28, 1968, defendant moved to dismiss the armed robbery indictment on the ground that he was denied his constitutional right to a speedy trial; and on May 8, 1968, the motion was granted.

In determining whether the court erred in dismissing the indictment, the dimensions of the constitutional right to a speedy trial, as defined in the cases, must be examined. The United States Supreme Court characterized that right as a "safeguard" to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusations, and to limit possibilities that long delay will impair the ability of the accused to defend himself. (*United States* v. *Ewell*, 383 U.S. 116, 120, 15 L. Ed. 2d 627, 86 S. Ct. 773.) In *Ewell* the court deemed "the essential ingredient" to be "orderly expedition and not mere speed." Hence, it concluded that the 19-month delay between the arrest and the hearing on the subsequent indictments, held immediately after defendant's motion to vacate sentence had been granted, did not violate the sixth amendment right to a speedy trial.

That right was examined in depth by the United States Supreme Court in *Klopfer* v. *North Carolina*, 386 U.S. 213, 226, 18 L. Ed. 2d 1, 87 S. Ct. 988. (See disc. 77 Yale L.J.

767 (1968).) There the right was held enforcible against the States by virtue of the fourteenth amendment and required the State to prosecute a charge which had been indefinitely postponed without justification over accused's objection. The sixth amendment right to a speedy trial was also construed to impose a constitutional duty on the State to make a "diligent good faith effort" to bring defendant to trial on a pending State charge while he was being incarcerated in a Federal penal institution. (*Smith* v. *Hooey* (1969), 393 U.S. 374, 383, 21 L. Ed. 2d 607.) In *Smith* the State repeatedly rejected over a 6-year period defendant's motions and requests for trial on a State charge of theft while he was a Federal prisoner. The Texas Supreme Court denied a *mandamus* order to show cause why the charges should not be dismissed and the United States Supreme Court reversed and remanded the cause to the State for further proceedings "not ·inconsistent with the opinion." Although the opinion did not dispose of the State charge or declare that the State had forfeited the right to try the petitioner, from the concurring opinions the scope of the remanding order is not unambiguous.

Even before the Smith opinion this court had emphasized the duty of the State to bring to trial a defendant charged with a State crime even though he was imprisoned outside the State, and held that the constitutional guaranty of a speedy trial contemplated that the means that are available to meet its requirements should be used by the State. *People* v. *Bryarly,* 23 Ill.2d 313, 319.

In addition to these general observations on the nature of the right to a speedy trial, the four relevant factors for consideration of a claim of denial of the constitutional right to a speedy trial are length of delay, reason for the delay, prejudice to defendant, and his waiver of the right. (*United States* v. *Perez* (7th cir., 1968), 398 F.2d 658, 661.) Those factors cannot be considered in isolation, but must be viewed in their totality, as appears from the following cases cited

by the State and defendant, in determining whether there was a denial of the constitutional right in any case. In *Perez* there was a 2-year delay between the time the warrant was served on defendant and when he was taken into custody; the Federal government failed to bring him to trial during his incarceration in a State penitentiary, and merely placed a hold order with the State; and the defendant failed to make any demand for trial. The Court of Appeals for the Seventh Circuit concluded that there was no denial of any constitutional right to a speedy trial to warrant dismissal of the charge.

In *People* v. *Moriarity,* 33 Ill.2d 606, this court concluded that the 10-month delay from the date Illinois officials took steps to obtain custody of defendant, after learning he was incarcerated in another State, and the date of his motion for discharge did not constitute such an arbitrary or oppressive delay as to deprive him of his right to a speedy trial. We stated at page 610: "When we consider the time which might have been consumed by extradition processes, together with the impracticality of transferring defendant back and forth between Illinois and Indiana when his sentence in the latter State has so short a time to run, we do not consider that the failure to utilize extradition procedures was unreasonable or' that it resulted in arbitrary or oppressive delay in trial."

In *People* v. *Love,* 39 Ill.2d 436, 443, this court explained that, while the Illinois "four-month statute" (Ill. Rev. Stat. 1967, ch. 38, par. 103—5,) implements the constitutional right to a speedy trial, it is not co-extensive with the right; hence, a delay of 180 days, which was not intentionally oppressive or purposeful and where there was no showing of prejudice other than a general assertion, did not violate defendant's constitutional right to a speedy trial and warrant dismissal. In contrast, in *People* v. *Hryciuk,* 36 Ill.2d 500, 504, the court held that the delay of 14 years involved not only a presumption of prejudice, but actual preju-

dice, since it rendered ineffective any cross-examination dealing with the critical issue of the voluntariness of defendant's confession, and that under the "unusual facts of this case" the defendant had been deprived of a speedy trial.

In *Bryarly* (23 Ill.2d 313) on which defendant relies, there was an 8-year delay before trial. The initial 2 years of delay was caused by defendant wrongfully leaving the State, but the ensuing 5-year delay, while defendant was known to be imprisoned in another State and the failure of the State to extradite him until after he was released from prison and went to a third State, was deemed to deprive him of his constitutional right to a speedy trial warranting a reversal of his conviction. In *Bryarly* the court also emphasized the State's abandonment of the cause by virtue of certain undisputed public statements of the prosecution, and the uncertainty as to whether the State even issued any hold order to the State where defendant was imprisoned.

Although the court in *Bryarly* did cite *State* v. *Prosser*, 309 N.Y. 353, 130 N.E.2d 891, which applied the minority rule allowing defendant to claim a denial of his constitutional right to a speedy trial without requiring his demand for trial, (57 A.L.R.2d at 335) since the *Bryarly* opinion at page 319 specifically confined its conclusions to the circumstances of the case, we do not regard it as inconsistent with what has become, to an even greater extent, the majority rule. That rule, consistently adhered to by the Federal courts, including the Seventh Circuit Court of Appeals, as well as by many State courts, requires defendant to make some demand for trial in order to assert a denial of his constitutional right to a speedy trial, otherwise it will be deemed waived. *United States* v. *Perez* (7th cir., 1968), 398 F.2d 658, 661; *United States* v. *Maxwell* (2d cir., 1967), 383 F.2d 427, 441, *cert.* den. 389 U.S. 1043, and cases cited therein; *Chapman* v. *United States* (2d cir., 1967), 376 F.2d 705, 707; *United States* v. *Kaufman* (2d cir., 1963), 311 F.2d 695, 698, *cert.* den. 369 U.S. 803; *United States*

v. *Lustman* (2d cir., 1957), 258 F.2d 475, 478, *cert.* den. 358 U.S. 880; *Merritt* v. *State* (1968), 244 Ark. 921, 428 S.W.2d 66; *State* v. *Pederson* (1958), 251 Minn. 372, 88 N.W.2d 13.

In the *Kaufman* case the court, in 1963, stated: "Whatever may be the rule elsewhere, see *People* v. *Prosser* (130 N.E.2d 891 (N.Y. 1955)), it is the rule of this circuit and of the other federal courts that the failure of a defendant to make a demand for a speedy trial constitutes a waiver of his rights." Similarly, in *Perez* at 661, the Court of Appeals for the Seventh Circuit quoted with approval the statement in *United States* v. *Maxwell,* at 441: "Aware that their claims are barred under *Lustman,* appellants invite us to abandon the so-called demand rule which we have consistently applied in a constantly lengthening line of cases [citing cases]. We decline the invitation, however, because the reasoning in *Lustman,* that the demand rule is consonant with the bulk of federal authorities and preserves the speedy trial right as a shield for the defendant's protection, but not as a sword for his escape, is still to us persuasive."

The "demand rule" is also consonant with the most recent pronouncement by the United States Supreme Court in *Smith* v. *Hooey,* 393 U.S. 374, 383, 21 L. Ed. 2d at 614, where the court stated: *"Upon the petitioner's demand,* Texas had a constitutional duty to make a diligent, good-faith effort to bring him before the Harris County court for trial." (Emphasis supplied.)

When the circumstances of the case before us are measured by the criteria respecting the constitutional right to a speedy trial, it is our opinion that the State authorities should have known, or made greater effort to ascertain, defendant's whereabouts during his detention at the Great Lakes Naval Center, and at the Disciplinary Compound at Portsmouth, New Hampshire. However, under the rationale of *People* v. *Moriarity,* 33 Ill.2d 606, in view of defendant's brief Naval disciplinary detention, the practicalities of

extradition would not have warranted such action; hence failure to utilize such means to bring defendant to trial during that time should not constitute a denial of the right to a speedy trial. Nor should the State, in fairness, be charged with the failure of the military authorities to honor the detainer and the stop order, which requested that the State be notified of defendant's discharge and offered to extradite him. It was the dereliction of the military authorities which was actually responsible for defendant being at large after his naval discharge.

However, assuming that the State is chargeable with the entire 18-month delay, it was certainly not purposefully incurred, nor excessive in view of the delays countenanced in the case law. (*United States* v. *Perez,* 398 F.2d 658; *United States* v. *Ewell,* 383 U.S. 116; *People* v. *Moriarity,* 33 Ill.2d 606.) Unlike the 5-year delay in *Bryarly,* defendant here was in no way misled that the State had abandoned the charge. He admittedly knew of the letters sent by the State's Attorney to his family respecting forfeiture of his bond on the pending State charge. Moreover, the record here clearly shows that the arrest warrant was sent to the Naval authorities at Great Lakes, and that the stop order was in fact communicated, all of which negate an intention by the State to abandon the charge.

We perceive no prejudice to defendant by virtue of the 18-month delay, other than the general assertion that the passage of time places a burden on the accused's ability to defend, which is not sufficient to warrant discharge. (*People* v. *Love,* 39 Ill.2d 436, 444.) Nor can we perceive how the delay prejudiced defendant in connection with the Federal charge to which he pleaded guilty, and for which he received probation. Furthermore, assuming that defendant did in fact send a letter to the court notifying it of his whereabouts while he was in Portsmouth, New Hampshire—and there is not a shred of evidence supporting that allegation— by no stretch of legal reasoning could that letter be deemed

a demand for trial as required in the cases where a denial of the constitutional right to a speedy trial is asserted. *United States* v. *Maxwell* (2d cir., 1967), 383 F.2d 437, *cert.* den. 389 U.S. 1043.

In our judgment the 18-month delay was certainly not entirely the fault of the State, and since that period was neither intentionally oppressive, nor prejudicial, and defendant failed to make the requisite demand for trial at any time during that interval, there is no basis for dismissal of the indictment on grounds of a denial of his constitutional right to a speedy trial. The judgment of the circuit court of Cook County, dismissing the indictment, is therefore reversed and the cause remanded with directions to reinstate the indictment.

*Reversed and remanded, with directions.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.