(No. 42747.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. WILLIS P. ARNDT, Appellant.

*Opinion filed January 14, 1972.*

SCHAEFER, J., dissenting.

MICHAEL P. TOOMIN, of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE and WILLIAM K. HEDRICK, Assistant State's Attorneys, of counsel,) for the People.

MR. JUSTICE DAVIS delivered the opinion of the court:

The defendant, Willis P. Arndt, was indicted for murder and involuntary manslaughter. Upon a bench trial in the circuit court of Cook County, he was found not guilty of the charge of murder, but guilty of involuntary manslaughter, and was sentenced to the penitentiary for a term of not less than four nor more than eight years.

On appeal, he contends that he was denied his constitutional right to a speedy trial; that the denial of his motion for a continuance was a deprivation of his constitutional rights; that his jury waiver was impliedly coerced in violation of his constitutional rights; and that the evidence was insufficient to establish his guilt beyond a reasonable doubt.

The defendant shot and killed Richard Levine while target practicing at a theater which he managed. The incident occurred at about 4:00 A.M. The defendant and Orberry Jackson, Dennis Martin and Richard Levine (the victim), three sailors, then stationed at the Great Lakes Naval Station, whom he employed as part-time helpers, were present in the theater at that time.

The defendant was in the spotlight room, approximately 100 feet from the stage, and was shooting at a wicker basket placed about 2 or 3 feet from an open curtain on the right-hand side of the stage. Levine was on the stage. He, along with the rest of the parties present, had been drinking. He crossed in front of the target area several times to change a tape recorder which was located behind the curtain, and then played the drums which were near the stage. Levine then started dancing on the stage and Jackson played the drums for awhile; and then Jackson went upstairs to the spotlight room. Several times when Levine walked near the target area, Jackson would guide him away—to the left of the stage—by means of the spotlight. The stage floodlights and footlights were turned

off, apparently by Levine. Whenever Levine would change the tape on the tape recorder, he would walk near the target area and Jackson would use the spotlight to guide him away and then return the spotlight to the target.

Ultimately, Levine changed a tape but did not cross back through the spotlight which was focused on the target. The defendant waited a while and then resumed firing. Jackson noted a heavy movement behind the curtain and ran to the stage. Some shots were fired while he was running to the stage. He found Levine lying on his back, partially in front of the curtain, with blood covering his face and legs.

The defendant contends that he was denied his constitutional right to a speedy trial by reason of a 60-day continuance granted to the State. While the Illinois "four-month statute" implements the constitutional right to a speedy trial, it is not coextensive with the right. *(People v. Tetter, 42 Ill.2d 569, 574; People v. Love, 39 Ill.2d 436, 443;* Ill.Rev.Stat. 1969, ch. 38, par. 103—5.) Subsection (c) of par. 103—5 provides for an extension of the 120-day period for up to an additional 60 days if the court determines that the State, without success, has exercised due diligence to obtain material evidence, and that there are reasonable grounds to believe that such evidence can be obtained at a later date.

Martin, one of the sailors, was asleep during the entire episode, and Jackson, the other, was an important witness to both the State and the defendant. On the 120th day after the defendant was taken into custody, the State presented a petition asking for a 60-day continuance, wherein it was alleged that Martin was at sea but that communications with the navy indicated he would be available for trial within the requested time. After arguments, the court granted the continuance. Several days later, the State sought and was granted the right to amend its petition by substituting the name of Jackson for that of

Martin. The State admitted that it had confused Martin with Jackson as the material witness, but asserted that all of the facts presented to the court, including the fact that the witness was at sea and unavailable, were applicable to Jackson.

We believe that there was no error in granting the continuance or in permitting the State to amend the face of its petition. At the time the court granted the petition, it was advised that a sailor, who was a material witness, could not be produced for trial because he was at sea. The court was satisfied as to the diligence of the State, the materiality of the evidence, and the unavailability of the witness. It then granted the petition for a continuance. The defendant filed a petition for a rehearing on the order granting this continuance, and the court could have modified or vacated its order had it been satisfied that the salient facts upon which it exercised its discretion in this respect were erroneous. The court satisfied itself, properly under our interpretation of the record, that the significant facts leading to the granting of the continuance remained the same, and that the only misstatement in the petition was the name of the sailor, who was described as Martin rather than Jackson.

The decision of whether an extension of the 120-day period should be granted rests within the discretion of the trial court, and its determination will not be disturbed unless there has been a clear abuse of discretion. *(People v. Wollenberg, 37 Ill.2d 480; People v. Poland, 22 Ill.2d 175, 178.)* The exercise of discretion by the trial court must be viewed in light of the situation as it existed at the time the matter was presented to the court, and not as it might appear in retrospect, or in view of subsequent events. *People v. Poland, 22 Ill.2d 175, 178.*

The effect of the continuance—the delay of the trial for an additional 60 days—was not violative of any constitutional right of the defendant; it was not intention-

ally oppressive and there was no showing of prejudice to the defendant. *People v. Tetter, 42 Ill.2d 569, 574; People v. Love, 39 Ill.2d 436, 441, 443.*

The defendant was originally charged with murder and voluntary manslaughter. After the 60-day continuance was granted to the State, the original indictment was nolle prossed upon the return of a new indictment which again charged the defendant with murder, but substituted involuntary manslaughter for the prior voluntary manslaughter charge. The defendant contends that the continuance granted under the original indictment had no force or effect upon the subsequent involuntary manslaughter charge.

We find no basis for such an argument. Involuntary manslaughter was a lesser offense included in the original indictment for murder *(People v. Ostrand, 35 Ill.2d 520, 530; People v. Lewis, 375 Ill. 330, 334)*, and the defendant was subject to a conviction for involuntary manslaughter even under the first indictment. Consequently, we find that the 60-day continuance was applicable to the involuntary manslaughter charge as well as to the murder charge. See: *People v. Lee, 44 Ill.2d 161, 166.*

The defendant moved for a continuance on the day of trial because of the unavailability of a witness and claimed that the new indictment had taken counsel by surprise. The witness, who was not one of the persons present at the theater when the incident occurred, purportedly would have testified to the defendant's intoxication earlier in the evening. The testimony of this witness would not have been material to the case in that voluntary intoxication is not a defense to the crime of involuntary manslaughter, since involuntary manslaughter is not a specific intent crime. *(People v. Flanagan, 338 Ill. 353, 361;* also see: Ill.Rev.Stat. 1969, ch. 38, par. 9—3(a) and par. 4—6; and IPI—Criminal 24.02.) Also, the granting of a continuance is a matter to be determined under the particular facts and circumstances surrounding the request. Before the trial

court's exercise of discretion may be reversed by this court, it must be shown that the denial to grant the continuance embarrassed the accused in the preparation of his defense so as to prejudice his rights. *(People v. Solomon, 24 Ill.2d 586, 589, 590.)* Under these circumstances, we find no error in the refusal to grant the continuance.

As to the claim of surprise by reason of the State's subsequent indictment, which included a count for involuntary manslaughter as we indicated above, the defendant was at all times subject to a conviction for involuntary manslaughter, even under the original indictment. Therefore, he cannot claim surprise in suddenly having to defend against a new and distinct charge.

The defendant sought to have the involuntary manslaughter count determined by a jury and the murder counts determined by the court without a jury. He had a right to demand a jury trial on the charges made against him in the indictment. However, since the murder charge included the lesser involuntary manslaughter charge, the defendant's demand for a simultaneous jury and bench trial for what amounted to the same crime, has no support in either precedent or reason. Under the defendant's novel contention, a jury could conceivably have found him not guilty of involuntary manslaughter; and the court could have found him guilty of this grade of homicide, or vice versa. Under these facts, there is no merit in the defendant's contention that the court impliedly coerced his waiver of jury by insisting that the waiver be to all of the charges encompassed in the indictment. The court properly refused his jury waiver limited only to the murder counts.

After reviewing the record, we are satisfied that there was adequate evidence to support the trial court's judgment that the defendant's conduct was sufficiently reckless to warrant a finding of involuntary manslaughter. Ill.Rev.Stat. 1969, ch. 38, par. 9—3(a) and par. 4—6.

The trial court was not required to search out a series of potential explanations compatible with innocence and elevate them to the status of reasonable doubt. *(People v. Huff, 29 Ill.2d 315, 320.)* The credibility and weight to be given to the testimony of the witnesses is a matter for the trial court's determination and will not be disturbed unless palpably erroneous. *(People v. Ostrand, 35 Ill.2d 520, 532, 533.)* For the foregoing reasons, the judgment of the circuit court is affirmed.

*Judgment affirmed.*

MR. JUSTICE SCHAEFER, dissenting:

In this case both the defendant and the only occurrence witness for the prosecution, testified that they thought that Levine was coming upstairs when the shots were fired and that they didn't know that he was behind the curtain. The defendant's wrongdoing, if any, thus consisted of his failure to be aware of the risk involved. That kind of wrongdoing comes precisely within the statutory definition of negligence, and does not constitute recklessness. (Ill.Rev.Stat. 1969, ch. 38, par. 4—7.) Yet the involuntary manslaughter statute punishes only reckless conduct and not the negligent failure to be aware of a risk. (S.H. Ill.Ann.Stat., ch. 38, par. 9—3, Committee Comments.) In my opinion, the proof did not establish the defendant's guilt of the offense of involuntary manslaughter, and the judgment of conviction should be reversed.