THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MELVIN WALKER, Defendant-Appellant.

(No. 11874;

Fourth District—December 17, 1974.

Ronald L. Barnard, of Chicago, for appellant.

Paul R. Welch, State's Attorney, of Bloomington (Michael J. Flynn, Assistant State's Attorney, and Steven M. Helm, Senior Law Student, of counsel), for the People.

Mr. JUSTICE TRAPP delivered the opinion of the court:

The trial court entered judgments of conviction upon jury verdicts finding defendant guilty of armed robbery and conspiracy to commit armed robbery. The defendant appeals the convictions and sentence of 2 to 5 years imposed for the armed robbery.

The robbery occurred at about 11 P.M. on June 3, 1969. A complaint against defendant was filed on June 24, 1969, after procuring a statement from an alleged accomplice. The defendant was indicted on November 7, 1969. In June, 1970, the prosecution learned that defendant was in Detroit and a warrant for his arrest was sent there. Sometime later, upon inquiry, the officials in Detroit reported that the warrant had not been received. In December, 1970, a Federal fugitive warrant was obtained and defendant was arrested in February, 1971, and returned for trial.

Defendant's alibi includes an assertion that he left the city at about 5 P.M. on June 3, the date of the robbery, stayed with his wife in Chicago for the rest of the week and then went to Detroit where he was employed on June 13, 1969. Thomas, who pleaded guilty to the robbery, testified that defendant left on the morning of June 4, following the robbery, and that defendant talked about going to Detroit.

Defendant's aunt testified that upon occasions in November and De-

cember, 1969, an individual showing police credentials had called to ask the whereabouts of the defendant but that although she knew defendant was in Detroit she believed the man was a bill collector and advised that she didn't know where defendant was or the address of defendant's sister in Chicago. Defendant asserts that he did not know of the charges until the day of his arrest.

Upon these circumstances, defendant asserts that he was denied the equal protection of the Fifth Amendment and a speedy trial under the Sixth Amendment. Defendant cites or argues certain language from *People v. Love*, 39 Ill.2d 436, 235 N.E.2d 819, without examining the facts or the applicable law. In that case a warrant had been issued but not served upon the defendant who resided within the county. The issue of speedy trial was raised in the context of section 103—5 of the Code of Criminal Procedure (Ill. Rev. Stat. 1969, ch. 38, par. 103—5), which required a trial within 120 days where a person was in custody.

In *Love*, the court pointed out that such statute was not co-extensive with the constitutional right to a speedy trial and that, apart from that statute, whether defendant had been denied a speedy trial was a judicial question. It was said that if it was not clear that a speedy trial was denied, the fact that defendant was or was not prejudiced through delay was of major significance in determining whether the delay was reasonable or unreasonable. Other than a general assertion, defendant does not demonstrate any actual prejudice through the loss of testimony or other evidence. No such deficiency appears in the trial record. Again, the record shows nothing of an intentional or oppressive delay for tactical advantage. *People v. Henry*, 47 Ill.2d 312, 265 N.E.2d 876; *People v. Tetter*, 42 Ill.2d 569, 250 N.E.2d 433.

■■ In a constitutional context there is no absolute period for establishing a deprivation of the right of speedy trial. (*People v. Henry*.) It is a relative right determined through a "functional analysis of the right in the particular context of the case." (*Barker v. Wingo*, 407 U.S. 514, 33 L.Ed.2d 101, 92 S.Ct. 2182.) In such analysis, one examines the totality of the factors of the length of the delay, the reason for such, the degree of prejudice shown and whether there has been a waiver of the right to speedy trial. (*Barker v. Wingo*; *People v. Henry* and *People v. Tetter*.) The factor of waiver is not present here.

An assertion of prejudice does not establish such as a fact, but is speculative in the absence of a showing of actual prejudice. (*United States v. Marion*, 404 U.S. 307, 30 L.Ed.2d 468, 92 S.Ct. 455; *People v. Love*, 39 Ill.2d 436, 235 N.E.2d 819.) The record is clear that a principal reason for the delay in prosecution was the absence of defendant from the state combined with the act of his aunt in choosing to deny her

knowledge of defendant's whereabouts or that of others of the family who might know where he was located. No case has been cited and we have found none which supports defendant's assertion that the delay in finding a person who has left the state establishes negligence or want of diligence constituting a deprivation of speedy trial. In *People v. Tetter*, 42 Ill.2d 569, 250 N.E.2d 433, defendant, after release on bond, was in the custody of the military. The latter failed to honor a detainer and the whereabouts of defendant was lost until his arrest 22 months later. In *People v. Henry*, 47 Ill.2d 312, 265 N.E.2d 876, there was a delay of 26 months before defendant was extradited from another state. It was determined that defendant's pending appeals in the custodial state were a sufficient reason to delay extradition.

Defendant's citation of *Dickey v. Florida*, 398 U.S. 30, 26 L.Ed.2d 26, 90 S.Ct. 1564, has little relevance to these facts. There defendant's place of custody was known; he had made repeated demands and taken legal action to secure prompt trial. A loss of evidence was established so that the court could determine that a delay of 8 years was for the convenience of the state.

There is no showing of a violation of due process absent the demonstration of actual prejudice or oppressive or intentional delay to gain tactical advantage. (*United States v. Marion*, 404 U.S. 307, 30 L.Ed.2d 468, 92 S.Ct. 455.) See also *Klopfer v. North Carolina*, 386 U.S. 213, 18 L.Ed.2d 1, 87 S.Ct. 988.

After defendant introduced testimony to establish an alibi, the prosecution called a rebuttal witness, Mrs. Printz. The defendant argues that the identification of defendant by this witness originated in improper identification procedures. Mrs. Printz testified that she was employed as a desk clerk at the Howard Johnson Lodge (a motel), and that at about 9 P.M. on June 3, two men came into the lobby, one of whom made what she considered an unusual, if not bizarre, inquiry. Shortly thereafter, the police called to advise that there had been the armed robbery here concerned. On the morning of June 4, a police officer called and showed her seven photographs. From this group she picked the accomplice, Thomas, and the defendant as the men who had come to the motel to make the inquiry. Upon the evening before she testified at this trial, in February, 1972, she was asked to appear at the court house to see whether she could identify a man. Upon her arrival she was shown the same seven photographs and, again, picked out the defendant. Pursuant to an order *in limine* before she entered the court to testify, defendant had changed his clothing and was seated in a group of nine men outside the bar of the court. The court noted that they were comparable in build and appearance. She positively picked defendant from this group and

identified him as the man who came into the Howard Johnson Lodge with Thomas. She testified that the light in the motel lobby was good, that defendant was about 4 feet distant across the counter and was present for about 10 minutes while the inquiry was made and while she searched the registration records. Direct and cross-examination disclose that on neither occasion when she examined the group of photographs was any suggestion made but only the inquiry as to whether she had seen any of the persons in the photographs. She testified that she neither saw any identification upon any photograph nor was told of anything concerning the individuals. Her recollection of the date and the identity was clear through the coincidence of the man making the unusual inquiry, the notification of the armed robbery and the fact that she was shown the group of photographs on the next morning.

Defendant argues that the pretrial procedure was so suggestive that it constituted a denial of due process, citing *People v. Martin,* 47 Ill.2d 331, 265 N.E.2d 685, *People v. Blumenshine,* 42 Ill.2d 508, 250 N.E.2d 152, and *People v. Johnson,* 45 Ill.2d 38, 257 N.E.2d 3. In *Martin,* the identification witness was shown a photograph of defendant alone prior to trial. While condemning the practice, the court found from all of the circumstances that the identification had an independent origin. In *Blumenshine,* the witness observed defendant at a showup and was told that the man was a suspect. That opinion held that it could not be ascertained from the record whether or not the identification witness picked defendant from a group of 20 photographs and also from police bulletins. It was held that such evidence of identification was admissible as the record showed an independent origin. Defendant also cites *Stovall v. Denno,* 388 U.S. 293, 18 L.Ed.2d 1199, 87 S.Ct. 1967. In this case, however, the witness identified the defendant at a showup and was told that he was a suspect.

■■ The independent origin of the identification here is emphasized by reason of the fact that in-court identification was made while defendant sat amongst eight individuals chosen by him. In the light of such circumstances, the record shows clear and convincing evidence that the identification at trial had an independent origin without influence from the view of the photographs. *United States v. Wade,* 388 U.S. 218, 18 L.Ed.2d 1149, 87 S.Ct. 1926.

While not raised here, we note that the pretrial display of the several photographs to the witness does not present an issue of the right to counsel under the Sixth Amendment. *United States v. Ash,* 413 U.S. 300, 37 L.Ed.2d 619, 93 S.Ct. 2568.

■■ One Solomon was the desk man at the motel during this robbery. He did not identify defendant at the trial or from any photographs shown

by the police. From such facts defendant argues that he was not proven guilty beyond a reasonable doubt and that the testimony of the accomplice, Thomas, was not trustworthy. The record shows, however, that upon the first entrance into the motel, the accomplice, Thomas, made an inquiry as to rates. When the two men approached the desk the second time and announced the robbery, Solomon was talking on the telephone. Defendant described as the man with the gun, stepped around to cover a second man behind the counter. The latter resided out of the state at the time of trial. Immediately Solomon became engrossed with the robber whom he identified as Thomas, and who demanded the money from the cash register and the cash boxes. We analyze the argument in the context of the rule that the uncorroborated testimony of the accomplice will sustain a conviction if it satisfies the trier of fact beyond a reasonable doubt. (*People v. Wollenberg*, 37 Ill.2d 480, 229 N.E.2d 490.) If there is material corroboration of the testimony of the accomplice, that testimony is entitled to great weight. *People v. Mentola*, 47 Ill.2d 579, 268 N.E.2d 8; *People v. Burnett*, 13 Ill.App.3d 931, 301 N.E.2d 600.

■■ There is substantial corroboration of the testimony of the accomplice, Thomas. Early in the trial he testified that following the robbery the defendant stated the alibi which he planned to use. Such alibi was thereafter presented by defendant in his defense. Thomas' account of the series of events in the robbery of the motel was corroborated by the witness, Solomon. Finally, the rebuttal witness, Printz, identified defendant as being with Thomas about an hour prior to this robbery and testified to the same sequence of events as stated by Thomas. Such constitutes a substantial corroboration of the testimony of the accomplice.

■■ Defendant argues that the trial court denied probation because he did not plead guilty and that such denial was an abuse of discretion. The record does not support this position. The court noted the seriousness of the offense in the context that defendant had handled the weapon, that the legislature had recently increased the minimum term for armed robbery from 2 to 4 years, and the necessity of a sentence to establish a deterrent effect. He heard the testimony of defendant and was well-advised both as to defendant's background and the circumstances of the offense. There is no basis which supports a conclusion of arbitrary or capricious action. *People ex rel. Ward v. Moran*, 54 Ill.2d 552, 301 N.E. 2d 300.

The trial court entered judgment of conviction upon the verdict of guilty of conspiracy to commit armed robbery, although he did not impose sentence. The record shows that the acts supporting such conviction were identical to and inseparable from the acts incident to the armed robbery. Upon the rule of *People v. Schlenger*, 13 Ill.2d 63, 147 N.E.2d

316, and *People v. Leggett*, 2 Ill.App.3d 962, 275 N.E.2d 651, the conviction of conspiracy to commit armed robbery must be reversed and the cause remanded to the trial court with directions to enter an amended *mittimus*. The conviction for armed robbery is affirmed.

Affirmed in part, reversed in part, and remanded with directions.

CRAVEN, J., and SIMKINS, P. J., concur.