THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HENRY NICKSON, Defendant-Appellant.

First District (1st Division)  Nos. 61537, 61917 cons.

Opinion filed March 13, 1978.—Rehearing denied April 12, 1978.

474

Arthur H. Grant, Ltd., of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Rimas F. Cernius, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Henry Nickson (defendant), was indicted for theft (Ill. Rev. Stat. 1973, ch. 38, par. 16—1(b)), conspiracy (Ill. Rev. Stat. 1973, ch. 38, par. 8—2) and official misconduct (Ill. Rev. Stat. 1973, ch. 38, par. 33—3). After a lengthy bench trial, he was found guilty of conspiracy and official misconduct and sentenced to probation for two years.

After separate bench trials, codefendant Malcolm Stewart was found guilty of official misconduct and codefendant Charles Shelton was convicted of official misconduct and theft. These two parties and defendant originally joined in appeals to this court. The appeals were consolidated for disposition. However, the appeals of Stewart and Shelton were disposed of by this court pursuant to *Anders v. California* (1967), 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396.

In his appeal defendant claims the indictment was fatally defective, guilt was not proven beyond a reasonable doubt, the court erred in not granting the defendant a severance, reversible error resulted from the multiplicity of trial errors, and the conviction for official misconduct must be vacated. We will consider each of these contentions in order.

The defendants were all employed in some capacity in the elevator or security departments of Cook County Hospital. The State's theory is that they conspired with the timekeeper in the security department to receive overtime pay for hours not actually worked during April 1973 through January 1974. The timekeeper, Corine Hayes, pleaded guilty to theft and received a sentence of probation for one year.

On direct examination, Hayes explained the method by which employee work time was normally recorded and then reported to the payroll department. Every morning she would receive a sign-in/sign-out sheet indicating the hours each employee worked on the previous day. If an employee worked overtime she received from him a time-due slip signed by the employee's supervisor. This extra time was also noted on the sign-in/sign-out sheets. Hayes transferred all the information regarding hours worked from these sources to a weekly time record book. This book indicated each employee's name, address, sick time, holiday time and overtime. At the completion of every two-week pay period, Hayes prepared an IBM summary sheet which showed separately straight work time and overtime for each employee. This sheet was theoretically approved by Hayes and the director of the security department. In actual practice Hayes signed the director's name to the sheet pursuant to his authorization and without first showing him the sheet. This IBM sheet was then forwarded to the payroll department and became the basis by which each employee eventually received a paycheck.

Hayes testified she approached the defendant, a security officer, in June of 1973 and suggested addition of unworked hours to his time summary on the IBM sheet and proposed they share the extra money he received. By refreshing her recollection from an IBM sheet she had prepared for trial, Hayes testified to specific pay periods between June 1973 and January 1974 wherein she credited defendant with additional straight time or overtime on the biweekly IBM summary sheets. Several of the pay periods reflected the addition of only a few hours. However, Hayes

specifically recalled several pay periods for which larger amounts of time were added in exchange for money or favors: on September 1, 1973, the defendant was given 43 additional hours pursuant to a conversation wherein he agreed to give her $100 although she actually received $75; on October 15, 1973, he was given 15 extra hours and she received $25; on November 10, 1973, he was given 16 extra hours and in turn gave another security officer, "Ivory," a television set as consideration for rides Ivory had often given Hayes's son; on December 8, 1973, she credited defendant with 8 hours in exchange for a ride to the airport by one of his subordinates and on December 22, 1973, he was given 28 hours and he gave her $50.

During her testimony the parties stipulated that for three pay periods the IBM summary sheets revealed more time for defendant than was recorded on the sign-in/sign-out sheets and that defendant was credited with time for days which the sign-in/sign-out sheets indicated defendant had not worked. The IBM sheets for these three pay periods reflected the following discrepancies: on June 23, 1973, an additional 16 hours were added; on September 1, 1973, an additional 43 hours and on December 22, 1973, an additional 28 hours. The original sign-in/sign-out sheets and IBM summary sheets for these and other pay periods were admitted into evidence. Hayes testified she destroyed the time-due slips in November of 1973 as they were "accumulating." It was further stipulated during trial that the director of finance for Cook County Hospital would testify that defendant cashed paychecks for the periods ending September 1, 1973, and December 22, 1973, totaling $350.33 and $240.15 above his normal pay. In total the State claimed defendant received $877.24 in unearned overtime.

Benjamin Isom, testifying on behalf of the defendant, stated he was employed as assistant director of security in charge of field services for Cook County Hospital from April 1973 through January 1974. He stated that for the pay period ending September 1, 1973, it was possible the defendant accumulated as much as 32 overtime hours. During that time another security officer was on vacation and defendant was in charge of the shift. Isom stated that during the pay period ending December 22, 1973, he utilized defendant in an after-hours investigation of thefts possibly involving security department personnel. Defendant was instructed not to report this extra time on the sign-in/sign-out sheets. On cross-examination Isom stated "it wouldn't surprise" him if defendant had not actually worked the additional days reflected during the pay period ending September 1, 1973.

The defendant denied giving Hayes money for additional overtime, agreeing with her to receive extra money, or ever receiving payment for overtime not worked. He stated he worked extra hours for the

vacationing security guard during the pay period ending September 1, 1973, and gave Hayes time-due slips reflecting these hours. He stated he had often seen Hayes throw these time-due slips into the wastebasket. He testified he worked overtime on special assignment for Benjamin Isom during the month of December 1973 and submitted time-due slips for these hours although he did not sign the sign-in/sign-out sheets. He denied giving Hayes's friend a television and stated he might have arranged for a subordinate to give Hayes a ride to the airport as it is a supervisor's responsibility to provide an employee with transportation in an emergency.

## I.

■■ Defendant contends that the conspiracy and official misconduct counts are fatally defective because they fail to set forth with particularity the elements of the offenses charged. (See Ill. Rev. Stat. 1975, ch. 38, par. 111—3(a)(3).) These contentions were never presented to the trial court by motion to quash or in any other manner. When the sufficiency of an indictment is attacked for the first time on appeal, the standard for review is that it "is sufficient if it apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to further prosecution arising out of the same conduct." (*People v. Pujoue* (1975), 61 Ill. 2d 335, 339, 335 N.E.2d 437; see also *People v. Rege* (1976), 64 Ill. 2d 473, 478, 356 N.E.2d 537; *People v. Gilmore* (1976), 63 Ill. 2d 23, 29, 344 N.E.2d 456.) In our opinion, the indictments in the instant case fully complied with these guidelines.

■■ The conspiracy count charges that, defendant, "with intent that the offense of theft be committed * * * agreed with Corine Hayes to the commission of the offense of theft * * *" and alleges Hayes "prepared false and fraudulent representations of the amount of hours worked * * *" and submitted these false representations in order that defendant "could receive a paycheck in excess of the amount to which HENRY NICKSON [defendant] was lawfully entitled * * *." Defendant faults this count for not stating the capacity in which Hayes prepared the allegedly false representations. However, the record shows not only that defendant was fully cognizant of Hayes's employment status as timekeeper but indeed premised his defense in part upon his assertion of submission of time-due slips to her for several disputed pay periods. Compare *Gilmore*, 63 Ill. 2d 23, 30.

■■ Defendant further urges that the conspiracy count failed sufficiently to describe the type of theft which was the objective of the alleged conspiracy. We note that "an indictment for conspiracy need not allege all the elements of the substantive offense which is the object of the

478

conspiracy * * *." (*People v. Williams* (1972), 52 Ill. 2d 455, 460, 288 N.E.2d 406; see also *People v. Lonzo* (1974), 59 Ill. 2d 115, 116, 319 N.E.2d 481.) The indictment fully apprised defendant of the critical elements of the conspiracy charge; namely, the agreement between defendant and Hayes leading to her submission of fraudulent representations for defendant's ultimate receipt of unlawful funds.

The official misconduct count charged that as an employee at Cook County Hospital defendant "did commit misconduct when in his official capacity; he knowingly performed an act which he knew he was forbidden by law to perform: to-wit: he accepted compensation for overtime work which he failed to perform * * *." Defendant claims this count does not specify the party from whom he accepted compensation, the nature of the compensation, his official capacity, or whether the illegal conduct was the performance or failure to perform an act. The language of the count refutes the persuasiveness of several of these contentions; particularly, the locale of employment is specified, compensation is clearly related to overtime payment of moneys, and the illegal conduct consists of the affirmative action of accepting unjustified remuneration. The record reflects defendant's complete awareness of his official employment status. It also shows that the indictment was ample so that defendant was not prejudiced in the preparation of his trial defense. This was readily apparent with respect to both charges. At no point during trial did defendant indicate he was hampered by the language of the indictment in preparing his defense; he received a strong and spirited defense; and the entire record is sufficient to preclude future prosecution arising from the incidents of April 1973 through January 1974.

Defendant also contends that the counts charging official misconduct and conspiracy to commit theft fail to specify the statutory provision allegedly violated. (Ill. Rev. Stat. 1975, ch. 38, par. 111—3(a)(2).) This contention is refuted by the pronouncement of the Supreme Court of Illinois that "failure of an indictment to comply with section 111—3(a)(2) by citing the statute violated, is merely a formal, nonjurisdictional defect." *People ex rel. Goznelli v. Brantley* (1971), 49 Ill. 2d 383, 385, 275 N.E.2d 396, *cert. denied*, 405 U.S. 1068, 31 L. Ed. 2d 799, 92 S. Ct. 1512; see also *People v. Mahle* (1974), 57 Ill. 2d 279, 312 N.E.2d 267.

II.

Defendant urges his guilt was not established beyond a reasonable doubt, presenting several points in support of this contention:

(1) He contends there was a fatal variance between the proof and the indictment. He urges the conspiracy and official misconduct counts

alleged he was an employee of Cook County Hospital while the proof showed Cook County Hospital was managed and controlled by The Health and Hospitals Governing Commission pursuant to the County Hospitals Governing Commission Act. (Ill. Rev. Stat. 1971, ch. 34, pars. 5011—5029.) Defendant raises this contention for the first time on appeal. In this situation, the standard for review regarding an alleged variance is much the same as when an indictment is attacked for the first time on appeal. (*People v. Johnson* (1976), 65 Ill. 2d 332, 337, 357 N.E.2d 1166; *People v. Figgers* (1962), 23 Ill. 2d 516, 518-19, 179 N.E.2d 626; *People v. Miller* (1977), 47 Ill. App. 3d 412, 417, 362 N.E.2d 22.) Thus, "a variance, to vitiate a trial, must be material and be of such character as may mislead the accused in making his defense or expose him to double jeopardy." (*Figgers*, 23 Ill. 2d 516, 518-19; see also *People v. Beacham* (1977), 50 Ill. App. 3d 695, 703, 365 N.E.2d 737.) Defendant does not claim he was misled in the preparation of his defense by this difference in nomenclature and, as above shown, the record adequately protects him from double jeopardy resulting from future indictments premised upon the same offenses charged.

■■ (2) It is next urged there was a fatal variance between the bill of particulars and the proof. The bill of particulars listed each pay period wherein the defendant allegedly received extra compensation and set forth the number of additional hours credited to him on the IBM summary sheets for these pay periods. Defendant claims the proof did not establish these itemized discrepancies because Hayes was unable to recall the precise number of hours she added for a few pay periods. However, comparison between the bill of particulars and the evidence at trial reveals that the State and defense counsel stipulated to the itemized discrepancies for three pay periods containing the largest number of extra hours. Further, Hayes testified to the number of hours added for the remaining majority of pay periods listed in the bill of particulars. These two factors refute defendant's claim of material variations. Variances between a bill of particulars and proof at trial are not regarded as material unless they are of such "substantial character" as would mislead the defendant in preparation of his defense or raise the possibility of double jeopardy. *People v. Ehn* (1974), 24 Ill. App. 3d 340, 351, 320 N.E.2d 536, *appeal denied* (1975), 58 Ill. 2d 594.

■■ (3) Defendant contends that Hayes's testimony was inadmissible as it was predicated upon her continued reference to the IBM summary sheet she prepared for trial. "[A] witness may refresh and assist his memory by the use of a written memorandum when he is unable to remember relevant facts." (*People v. Van Dyk* (1976), 40 Ill. App. 3d 275, 279, 352 N.E.2d 327, *appeal denied* (1976), 63 Ill. 2d 562.) It does not

appear that Hayes read from the summary sheet. She used the sheet to refresh her recollection, then testified without the sheet and from her own recollection as thus refreshed. *Van Dyk*, 40 Ill. App. 3d 275, 279.

■■ (4) Defendant questions whether Hayes's testimony is sufficient upon which to base a conviction as she was an accomplice. Illinois follows the rule that "uncorroborated accomplice testimony is a sufficient ground on which the trier may base a conviction * * *" (*People v. Wilson* (1977), 66 Ill. 2d 346, 349, 362 N.E.2d 291), even if it is apparent the accomplice witness received leniency (*People v. Nastasio* (1963), 30 Ill. 2d 51, 55, 195 N.E.2d 144, *cert. denied* (1964), 377 U.S. 911, 12 L. Ed. 2d 181, 84 S. Ct. 1173). We cannot conclude that Hayes's sentence of probation detracted from the reliability of her testimony concerning the defendant and the record fails to indicate any evidence of malice on her part toward the defendant or factual contradictions in her testimony.

■■ (5) Defendant further claims Benjamin Isom's testimony was not discredited on cross-examination. This contention is unacceptable in view of Isom's acknowledgement that it was possible defendant did not report for work during the extra days of the September 1, 1973, pay period. Defendant urges he was denied his right to confrontation because he was unable to cross-examine Hayes regarding the documents she utilized in preparing the IBM summary sheet referred to at trial. This argument is untenable as the original IBM summary sheets and sign-in/sign-out sheets pertinent to the defendant were admitted into evidence. The defendant also argues the trial judge explicitly found defendant not guilty of accepting additional compensation when the judge exclaimed "not guilty" upon the State's attempt to enter a stipulation for pay periods wherein the defendant allegedly received only four additional hours. The court's remark was not a finding but was merely a comment upon the attempted stipulation. At the conclusion of defendant's case, as the record clearly shows, the judge entered a finding of guilty on two of the counts.

■■ (6) Citing *People v. Beasley* (1976), 41 Ill. App. 3d 550, 353 N.E.2d 699, *appeal denied* (1976), 65 Ill. 2d 578, defendant argues that the finding of guilt against him was inconsistent because one of the codefendants was found not guilty upon identical charges and evidence. The failure "to convict one co-defendant does not raise a reasonable doubt as to the guilt of the other co-defendants" unless "the evidence given against all of the defendants is identical in all respects." (*People v. Stock* (1974), 56 Ill. 2d 461, 465, 309 N.E.2d 19.) In the case before us, the acquitted employee presented time-due slips to refute the State's position she had not worked for certain hours credited during one pay period. No such testimony was presented at defendant's trial. The evidence in the

two cases was thus not identical in all respects. We find no inconsistency here.

■■ (7) It is next urged that Hayes's testimony concerning the contents of the sign-in/sign-out sheets and IBM summary sheets was inadmissible as the best evidence rule requires production of originals of these documents. It is correct that an original writing must be produced to prove the contents thereof unless a proper foundation is laid to justify its absence. (*People v. Poindexter* (1973), 18 Ill. App. 3d 436, 438-40, 305 N.E.2d 400.) In the instant case the original sign-in/sign-out sheets and IBM summary sheets were admitted into evidence. They were properly available to the trial court to supplement Hayes's recitation of hours added to the report forwarded to the payroll department. Hayes also gave a credible and uncontradicted explanation of the absence of time-due slips. She testified that they were discarded as they accumulated. In any event, the additional hours noted on these slips were also recorded on the sign-in/sign-out sheets.

■■ (8) Defendant also contends the court erred in admitting the original sign-in/sign-out sheets and IBM summary sheets. Defendant's theory is they were not proper business records pursuant to statutory provision (Ill. Rev. Stat. 1975, ch. 38, par. 115—5), but were self-serving declarations analogous to prior consistent statements. Defendant contends no proper foundation was laid for the introduction of the so-called IBM sheets which defendant urges are "computer generated" documents requiring a more detailed foundation. In our opinion the records in question comply with the statutory provision pertinent to business records. They were all made in the regular course of business and kept in accordance with the time-element requirement stated in the statute. (Ill. Rev. Stat. 1975, ch. 38, par. 115—5(a).) The falsity of some of these entries, admitted by Hayes, upon which defendant bases this argument merely illustrates the strength of the State's case. Neither the sign-in/sign-out sheets nor the so-called IBM summary sheets can be considered prior consistent statements. These sheets were prepared by the employees or Hayes in the regular course of business and constitute work product. Defendant's assertion that the so-called IBM summary sheets were "computer generated" documents is inaccurate as these sheets were not generated from a computer but rather prepared by Hayes for use in connection with a computer.

■■ In summary, in view of the stipulations regarding defendant's receipt of overtime pay for many hours not noted on the sign-in/sign-out sheets, Hayes's testimony detailing specific hours added and gifts and moneys received, and the defendant's inability to account for additional hours of several pay periods, the evidence is not " 'so unsatisfactory as to

cause a reasonable doubt of guilt to appear'." (*People v. Lofton* (1977), 69 Ill. 2d 67, 73, 370 N.E.2d 517, quoting from *People v. Fleming* (1971), 50 Ill. 2d 141, 146, 277 N.E.2d 872.) On the contrary, we find the evidence is sufficient to prove the guilt of defendant beyond reasonable doubt. Finally, our rejection of defendant's contentions regarding trial errors eliminates the necessity of considering his argument that the cumulative effect of multiple trial errors requires reversal.

## III.

■■ Defendant claims the court erred in not granting his motion for severance. The primary criterion for granting such a motion is the determination that the defenses of the several defendants are so antagonistic that fair trials will result only from granting a severance. (*People v. Brooks* (1972), 51 Ill. 2d 156, 166, 281 N.E.2d 326.) Mere apprehension of a conflicting situation does not provide the trial court with sufficient grounds for granting the motion. (*People v. Davis* (1976), 43 Ill. App. 3d 603, 610, 357 N.E.2d 96, *appeal denied* (1977), 65 Ill. 2d 578.) In our opinion a severance was not warranted in the case before us. In the motion for severance defendant asserted only that the lack of any nexus between himself and the other defendants in the alleged conspiracy precluded their joint trials. Further, defendant cites no portion of the record wherein any of the other defendants testified in a manner antagonistic to defendant or even with reference to defendant's activities.

## IV.

■■ Defendant's final point is that the trial court improperly convicted him of official misconduct which, he asserts, arose out of the same conduct as his conviction of conspiracy to commit theft. The record shows that the count for theft by deception, regarding which defendant was not convicted, alleged that he obtained control over property of the owner by deception with intent to deprive the owner permanently of the use or benefit of the property. (Ill. Rev. Stat. 1973, ch. 38, pars. 16—1(b), 16—1(d)(1).) Since defendant was found guilty of conspiracy to commit this theft, it would have been legally improper also to find him guilty of the principal crime toward accomplishment of which the conspiracy was directed. Ill. Rev. Stat. 1975, ch. 38, par. 8—5; see also *People v. Walker* (1974), 24 Ill. App. 3d 421, 426-27, 321 N.E.2d 114, *appeal denied* (1975), 57 Ill. 2d 609.

Defendant was also convicted of official misconduct. Under this statute the charge was that defendant knowingly performed an act which he knew he was forbidden by law to perform. (See Ill. Rev. Stat. 1975, ch. 38, par. 33—3(b).) The indictment also alleged that this act was

acceptance of compensation for overtime work which he failed to perform. In our opinion, the acts of the defendant, involving knowing acceptance of compensation for overtime work which he failed to perform, are identical with his acts and conduct in obtaining control over property of the owner by deception with intent permanently to deprive the owner thereof. In this type of situation we depend upon the teaching of *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, which specifies that prejudice results to a defendant "only in those instances where more than one offense is carved from the same physical act."

● ■ The charge of conspiracy to commit theft is a Class 3 felony. (Ill. Rev. Stat. 1975, ch. 38, pars. 16—1(e)(2), 8—2.) Official misconduct is a Class 4 felony. (Ill. Rev. Stat. 1975, ch. 38, par. 33—3(d).) Under these circumstances, we are obliged to reason from the premise that the principal and substantive offenses of theft by deception and official misconduct both are carved from the same conduct and we should also consider the principle that a defendant should not be convicted of both the inchoate and the principal offense. To do otherwise would, in our opinion, permit a difference in nomenclature to dictate a violation of the cited statute which forbids conviction for both the inchoate and the principal offense. We note that in disposition of codefendant Charles Shelton's appeal, by Supreme Court Rule 23 order (Ill. Rev. Stat. 1975, ch. 110A, par. 23), entered April 25, 1977, this court affirmed his conviction for theft and vacated his conviction and sentence for official misconduct. (See Docket Nos. 61537, 61917, 47 Ill. App. 3d 1072.) Under the authority of *King*, we conclude that we should vacate the conviction and sentence for official misconduct. As shown, the latter is the lesser of the two offenses. Accordingly, the conviction and sentence for conspiracy are affirmed and the conviction and sentence for official misconduct are vacated.

Affirmed in part and vacated in part.

McGLOON and O'CONNOR, JJ., concur.