JOE HOYT MERRITT *v.* STATE OF ARKANSAS

5343                                        428 S. W. 2d 66

Opinion delivered May 21, 1968

*Louis W. Rosteck,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston,* Asst. Atty. Gen., for appellee.

LYLE BROWN, Justice. Appellant Joe Hoyt Merritt, an inmate at the Arkansas Penitentiary, moved to dismiss two charges of felonious escape pending in the Pulaski County Circuit Court. Two terms of court intervened since the filing of the charges, and that fact would

ordinarily entitle him to have the charges dismissed. His motions were denied and he appeals.

Merritt was committed to our penitentiary in 1960. In 1962 he was brought to Pulaski County for mental observation and he escaped. He was apprehended and returned to the penitentiary. That escape resulted in a charge being filed in the Pulaski Circuit Court. In July 1963 he was returned to Pulaski County for the purpose of arraignment on that charge. Arraignment was not perfected because he escaped again. That flight brought on a second charge of felonious escape. Within a few months he was in the Texas Penitentiary. He remained there until 1964, at which time he was delivered to our penitentiary authorities to serve the balance of his sentence. So far as the record discloses, Pulaski County authorities had no knowledge of Merritt's return to this State.

Pulaski authorities apparently learned of Merritt's whereabouts in 1966, at which time he was still serving out time in our penitentiary. He was again brought before the court and entered pleas of not guilty. At that time more than two terms of court had elapsed since the filing of the charges. Before the cases were reached for trial, Merritt's motions to dismiss were filed. Those motions were grounded on Ark. Stat. Ann. § 43-1708 (Repl. 1964) which requires that an accused who is incarcerated be brought to trial before the end of the second term after the filing of the charges; however, delay which happens "on the application of the prisoner" effects a waiver.

The problem before us should here be succinctly stated. In the absence of a showing of knowledge on the part of Pulaski authorities of the return of Merritt, is he entitled to a dismissal of the charges?

When Merritt made his successful escape he removed himself from the protective provisions afforded him by § 43-1708. That is true for two reasons:

(1) The purpose of the statute is to implement Ark. Const. Art. 2, § 10, which guarantees a speedy trial in criminal cases. While the constitutional and statutory provisions were enacted to prohibit oppressive delays, they do not preclude the rights of public justice. See *Beavers* v. *Haubert,* 198 U. S. 77 (1905). The rights of public justice and the theory that the provisions afford relief to fugitives in all cases are not harmonious. Kansas has a statute almost identical with our § 43-1708. We agree with the holding in *State* v. *Aspinwall,* 252 P. 2d 841 (Kan. 1953), to the effect that an escaped fugitive removes himself from the protective coverage of the statute.

(2) The phrase, "unless the delay shall happen on the application of the prisoner," includes any affirmative act by the accused which prevents a speedy trial. *State* v. *Hess,* 304 P. 2d 474 (Kan. 1956). Merritt's escape and refuge in Texas at a time when the first charge was being processed for trial effected postponement of the proceedings.

We are next faced with a more puzzling question. When our penal authorities brought Merritt back to the penitentiary from Texas, was he ipso facto reinvested with the privileges afforded him by § 43-1708? Considerable research afforded no pointed answer. We start with the premise that the provisions for a speedy trial are not inflexibly mandatory. See *Leggett* v. *Kirby,* 231 Ark. 576, 331 S. W. 2d 267 (1960). This court, in the exercise of sound discretion, should endeavor to blend the two cardinal principles afforded by the provisions —the prohibition against vexatious delay and the rights of public justice—and produce an answer which harmonizes with both principles. Guided by that approach, we conclude that in the absence of a showing that the authorities in Pulaski County were made aware of Merritt's return and took no action within the prescribed two terms, Merritt's rights under the recited statute did not reinvest.

Although the facts were slightly different, we are encouraged by the holding in *State* v. *Pederson,* 88 N. W. 2d 13 (Minn. 1958). There the fugitive returned to the State but did not make known his presence and request a trial. It was held that he waived his rights by escaping and only a return *and a request for trial* could restore his rights under a statute limiting the time for prosecution.

Any other rule would tend to defeat the rights of public justice as it pertains to returning fugitives. To hold otherwise would make it possible for a fugitive from justice to return to this State, become incarcerated under an alias in any one of our more than seventy-five county jails for a period of two terms of court and thereby nullify a pending felony indictment. The same immunity could be gained by being so confined on one of the several penal farms in the State, or in either of the branches of the penitentiary.

An escapee being returned to our penitentiary and who feels aggrieved by the pendency of other charges, can without the least difficulty make known his return and his desire that those charges be processed. Either a word to his warden, a letter to the trial court, or a letter to this court, or the federal district court, would accomplish the result. For Merritt, who feloniously fled the State to avoid trial, to rest in silence for a statutory period and thereby nullify the charge, does not comport with the rights of public justice.

Affirmed.