568 P.2d 92 (1977)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Larry Edward GILLINGS, Defendant-Appellant.
No. 76-228.
Colorado Court of Appeals, Div. 3.
June 2, 1977.
As Modified on Denial of Rehearing June 30, 1977.
*93 J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., E. Ronald Beeks, David K. Rees, Asst. Attys. Gen., Denver, for plaintiff-appellee.
Don L. Nelson, Fort Collins, for defendant-appellant.
STERNBERG, Judge.
Contending that his right to speedy trial has been violated, and that a previous finding *94 of insanity was binding on the court, defendant Larry Gillings appeals the denial of his motion for post-conviction relief. We affirm.
The relevant facts are these: On October 11, 1973, Gillings was charged, in Larimer County District Court, with first and second degree kidnapping, rape, and deviate sexual intercourse arising out of acts allegedly committed two days earlier. On October 16, 1973, he pled not guilty by reason of insanity and was transferred to the Colorado State Hospital in Pueblo for examination.
After his examination, Gillings was transferred to the Pueblo County jail from which he escaped on December 14, 1973. Several days later the escape was reported to the Larimer County District Court and it issued a bench warrant. Gillings eventually surrendered to authorities in South Dakota and was returned to the Pueblo County jail on May 19, 1974. The Larimer County sheriff's office was apprised of this fact, but the Larimer County district attorney's office did not learn of it until several months later.
Gillings was indicted by a Grand Jury in Pueblo on escape charges and pled not guilty by reason of insanity. At his trial on the escape charges, he was found to be not guilty by reason of insanity at the time of the escape, December 14, 1973, and at the time of the trial, November 26, 1974. He was committed to the State Hospital to be held until eligible for release.
The Larimer County district attorney's office first learned of Gillings' return to custody on September 3, 1974, and reactivated the prosecution. On December 10, 1974, Gillings moved for dismissal of the long pending charges against him, contending that his right to a speedy trial had been violated because he had not been brought to trial within six months of his return to custody. The court denied the motion, concluding that the delay stemmed from Gillings' escape and that he could not rely on his own transgression to invoke the speedy trial rule. Between the December 10, 1974, motion and the trial on August 27, 1975, Gillings made several motions for psychiatric examination thus delaying the trial still further.
Notwithstanding his prior adjudication of insanity in the Pueblo proceedings, Gillings was tried by a jury in Larimer County on his insanity plea and was found to be sane both at the time of the alleged offense, October 9, 1973, and at the time of trial, August 27, 1975. Also, based upon the evidence of all examining psychiatrists, including one who concluded Gillings was insane, the court found him to be competent to stand trial. Thereafter, on September 24, 1975, Gillings pled guilty to sexual assault and second degree kidnapping and was sentenced under the Colorado Sex Offenders Act, § 16-13-201 et seq., C.R.S.1973, to an indeterminate term of one day to life in the State Penitentiary.
Thus, Gillings was found to have been sane on October 9, 1973; insane on December 14, 1973, and November 26, 1974; sane and competent to stand trial on August 27, 1975.

I.
We do not agree with Gillings' first contention, that he was denied his right to a speedy trial as guaranteed by the Colorado statute and the Federal Constitution.
The speedy trial statute in effect at the time of Gillings' not guilty plea, 1971 Perm. Supp., C.R.S.1963, 40-1-505, (now § 18-1-405(6), C.R.S.1973) required that a defendant be brought to trial within six months from the date of a plea of not guilty. That statute also expressly delineated how this time period was to be computed, indicating specific exclusions among which are:
"(a) Any period during which the defendant is . . . under observation or examination pursuant to a plea of not guilty by reason of insanity;
(d) The period of delay resulting from the voluntary absence or unavailability of the defendant;

*95 (f) The period of any delay caused at the instance of the defendant."
Gillings asserts that the applicable period of delay is between May 19, 1974, the date of his return to custody in Colorado, and December 10, 1974. He also contends that this greater than six month time period is totally attributable to the People in that he made no requests for continuances during that time and was in the custody of the state during the entire time period.
Before we can meet this contention, however, we must first respond to the People's assertion that the applicable speedy trial time period is one year, rather than six months. The basis of the People's contention stems from a conflict between the statute relied upon by Gillings, 1971 Perm. Supp., C.R.S.1963, 40-1-505, and the then applicable rule which provided for a one year period. Crim.P. 48(b) (1963).
As authority for their position the People cite Lucero v. People, 161 Colo. 568, 423 P.2d 577 (1967), and Casias v. People, 160 Colo. 152, 415 P.2d 344 (1966). In those cases our Supreme Court held that a conflict between the "speedy trial" rule and the "speedy trial" statute was to be resolved in favor of the rule. That is, the time limitation in the rule is to be applied rather than that in the statute.
However, when the General Assembly repealed and reenacted the Criminal Code, in which was included 1971 Perm.Supp., C.R.S. 1963, 40-1-505, it included the following provision:
"Except as otherwise expressly provided by section 40-1-108, or unless the context otherwise requires, the provisions of this code govern the construction of and punishment for any offense defined in any statute of this state, whether in this chapter or elsewhere, and which is committed on or after July 1, 1972, as well as the construction and application of any defense to a prosecution for such an offense." 1971 Perm.Supp., C.R.S.1963, 40-1-103(1).
See also 1971 Perm.Supp., C.R.S.1963, 40-1-501; Carr v. District Court, Colo., 543 P.2d 1253 (1975).
This broad and all encompassing language mandates the application of the statute rather than the rule. We hold, therefore, that the six month time limitation of the statute is controlling and note that shortly after the effective date of 1971 Perm.Supp., C.R.S.1963, 40-1-505, Crim.P. 48(b) was amended (in 1974) to conform with that statute. See Carr v. District Court, supra.
Having determined that the six month statute is applicable we now turn to the question of whether, in fact, Gillings has been denied a speedy trial under that statute.
Gillings asserts that it was the duty of the district attorney to bring him to trial within six months from the time of his return to custody on May 19, 1974. In this connection Gillings would have us hold that knowledge by the Pueblo County authorities of Gillings' return to custody after his escape as communicated to the Larimer County sheriff's office should be imputed to the Larimer County district attorney. This contention is made notwithstanding the fact that the delay in the first instance was occasioned by Gillings' escape and in spite of the fact that the prosecutor had no actual knowledge of Gillings' return to Colorado until at the earliest September 3, 1974.
As authority for the proposition that notice to the sheriff's office constitutes notice to the district attorney, Gillings cites as determinative DeLuzio v. People, 177 Colo. 389, 494 P.2d 589 (1972). In DeLuzio, however, the court was dealing with knowledge by the district attorney's chief investigator that perjured testimony was being offered by the prosecution and favorable evidence being withheld from the defendant. The imputation of knowledge to a district attorney regarding actions of his own employee is substantially different from the imputation of knowledge from one independent office to another. And the element of bad faith present in DeLuzio does not exist here. Hence, we do not view DeLuzio as dispositive.
*96 The issue is thus reduced to this: Is it the duty of the district attorney to discover the return to custody of an escaped defendant or is it the duty of the defendant to inform the prosecutor of his return and renew his demand for speedy trial? Stated differently, on whom is the speedy trial burden after an escape and return to custody? Our research reveals two cases which deal with this issue.
In Merritt v. State, 244 Ark. 921, 428 S.W.2d 66 (1968), the defendant, while an inmate in the state penitentiary, escaped from custody while charges were pending against him. He was subsequently returned to the penitentiary, but the prosecutor had no knowledge of his return to custody until some two years after the fact. Apparently, two different counties were involved. When proceedings commenced, defendant moved for dismissal based on the state's failure to comply with its speedy trial rule. The Arkansas Supreme Court responded:
"An escapee being returned to our penitentiary and who feels aggrieved by the pendency of other charges, can without the least difficulty make known his return and his desire that those charges be processed. . . . For [defendant], who feloniously fled the State to avoid trial, to rest in silence for a statutory period and thereby nullify the charge, does not comport with the rights of public justice."
Similarly, in State v. Pederson, 251 Minn. 372, 88 N.W.2d 13 (1958), on facts similar to those in Merritt, the court held that the defendant had waived his right to a speedy trial by escaping and by failing upon his return to the state to demand his rights under the law. See also People v. Tetter, 42 Ill.2d 569, 250 N.E.2d 433 (1969); State v. Aspinwall, 173 Kan. 699, 252 P.2d 841 (1953).
We find these cases to be persuasive, and significantly, it appears that no contrary authority exists. Furthermore, to reach a contrary conclusion would be to allow one who escapes from custody to derive benefit from his wrongful act. We hold, therefore, that Gillings' escape stopped the running of the six months rule, and that the time did not again commence to run until September 3, 1974, when the district attorney had actual knowledge of Gillings' return to custody. Consequently, the period of "delay" between May 19 and September 3 is chargeable to Gillings and not the state. The proceedings against Gillings were commenced again on December 10, 1974, within six months from September 3, 1974, and, as noted above, all delay thereafter was attributable to him. Thus, he was not denied a speedy trial under the statute.
In determining the merits of Gillings' contention that his constitutional right to a speedy trial was violated, four factors are relevant: (1) The length of the delay, (2) the reason for the delay, (3) the defendant's demand or failure to demand a speedy trial, and (4) the prejudice to the defendant, if any. People v. Spencer, 182 Colo. 189, 512 P.2d 260 (1973).
We have previously discussed and determined that the length and reason for the delay are, for the most part, both chargeable to Gillings, and Gillings made no demand for a speedy trial upon his return to custody. We conclude, therefore, that Gillings' constitutional right to a speedy trial was not violated.

II.
We also disagree with Gillings' contention that, having been found insane in one court of competent jurisdiction and remanded to the custody of the Department of Institutions for treatment until restored to reason, he could not be prosecuted in another court on separate charges brought and tried during the period of treatment.
At the outset, it is imperative to draw the sharp distinction between insanity and incompetency as established by the General Assembly. Compare § 16-8-101, C.R.S. 1973, with § 16-8-102(3), C.R.S.1973. See Parks v. District Court, 180 Colo. 202, 503 P.2d 1029 (1972). See generally People v. Coca, Colo.App., 564 P.2d 431 (No. 75-699, announced May 5, 1977).
*97 Insanity at the time of the alleged offense is a complete defense to the criminal charge. Parks v. District Court, supra. In contrast, one found incompetent to stand trial is committed to the custody of the Department of Institutions until such time as he is able to stand trial. Parks v. District Court, supra. Hence, incompetency merely abates the action and is procedural in effect, while insanity is substantive and renders the defendant not guilty.
Moreover, the statutory scheme relating to insanity and incompetency, § 16-8-101 et seq., C.R.S.1973, expressly prescribes the procedures by which one is to be adjudged incompetent or insane as well as the method by which an insane person is released from commitment (§ 16-8-115, C.R.S.1973), and an incompetent restored to competency (§ 16-8-113, C.R.S.1973).
Simply stated, insane persons are, under the law, not necessarily incompetent to stand trial because of the fact of their insanity. Thus, an insane yet competent person who may be able to assist in his own defense, may be tried if his insanity can be attributed to the time of the trial and not the time of the offense, while, in contrast, an incompetent defendant may not be tried.
Moreover, while a finding of insanity as to one time is binding on the courts, such a finding does not mandate a finding of insanity as to an earlier time period. People v. Kernanen, 178 Colo. 234, 497 P.2d 8 (1972). However, a person found insane as to one time cannot be held to be sane at a subsequent time unless and until there is compliance with the statutory mandates relating to release from commitment. Farina v. District Court, Colo., 533 P.2d 394 (1976); Bartosik v. People, 155 Colo. 219, 393 P.2d 571 (1964). Hence a court cannot find one sane who had previously been found insane unless he is first "released from commitment" pursuant to law. Section 16-8-115, C.R.S.1973.
Application of these principles to the facts here starts with Gillings' adjudication of insanity by the Pueblo District Court on November 26, 1974. While the court's order relating to this finding of insanity is silent as to Gillings' competency to stand trial, the record does contain a letter from the examining psychiatrist, on whose report the trial court based its decision, concluding that Gillings was insane but "able . . . to cooperate in his own defense."
As far as Gillings' sanity on and after December 14, 1973, is concerned, the Pueblo County District Court's findings are binding on the Larimer County District Court until such time as Gillings is released from commitment pursuant to § 16-8-115, C.R.S. 1973. Farina v. District Court, supra; Bartosik v. People, supra. However, the Pueblo County District Court's finding pertains only to Gillings' sanity subsequent to December 14, 1973. Therefore, the Larimer County District Court's finding that Gillings was sane prior to December 14, 1973, i.e., specifically October 9, 1973, is neither prohibited by statute nor inconsistent with the Pueblo ruling. Indeed, in People v. Kernanen, supra, the court held that a finding of insanity as to a later time period does not preclude a contrary finding as to a defendant's mental state a few hours earlier, although the former finding shifts the burden to the People of demonstrating sanity at the later hearing.
Hence, the Larimer County District Court's finding that Gillings was sane on October 9, 1973, is not legally deficient. As to Gillings' reliance on Kernanen, supra, as dispositive, we disagree. First of all, Kernanen is distinguishable in that factually there the time span was hours while here it is months. Moreover, even if Kernanen were applicable, there was sufficient evidence presented by the People to rebut any presumption of insanity.
Consequently, the trial court had the authority to adjudge Gillings sane at the time of the commission of the offenses for which he was charged in Larimer County (October 9, 1973), notwithstanding the prior finding of insanity on the date of a subsequent offense (December 14, 1973).
*98 However, the Larimer County District Court was without authority to find Gillings sane as of the date of his trial on August 27, 1975, there having been no compliance with the statute regarding release from commitment. Bartosik v. People, supra. Nevertheless, since the Larimer County District Court also found Gillings competent to stand trial on that date, its error in regard to the finding of sanity does not affect Gillings' rights in any way and, hence, is not prejudicial error. Therefore, even though Gillings remained legally insane as a result of the finding in Pueblo County on November 26, 1974, he was nevertheless, by the specific ruling of the Larimer County District Court, competent to stand trial on August 27, 1975. (It is to be remembered that Gillings was not previously found incompetent, so the competency hearing held by the Larimer County District Court was not in violation of § 16-8-113, C.R.S.1973). Although a person may be both insane and incompetent, likewise, one may be insane and yet competent to stand trial. Parks v. District Court, supra. Similarly, even an insane defendant can be found guilty of a crime, provided he was not insane at the time of the offenses charged.
Gillings cites Leick v. People, 136 Colo. 535, 322 P.2d 674, cert. denied, 357 U.S. 922, 78 S.Ct. 1363, 2 L.Ed.2d 1366 (1958), and Hampton v. Tinsley, 240 F.Supp. 213 (1965), rev'd on other grounds sub nom., Patterson v. Hampton, 355 F.2d 470 (10th Cir. 1965), for the proposition that a person who is legally insane must be committed and cannot be sentenced under the Sex Offenders Act. Both Leick and Hampton, however, were decided under a statute no longer in effect, viz., C.R.S.1963, 39-8-1 et seq.
Under that statute a defendant found to have become "insane" subsequent to the commission of the offense for which he was charged, and also insane at the time of trial, was to be committed until such time as he was restored to reason and then brought to trial. C.R.S.1963, 39-8-6. However, this section of the Criminal Code was repealed and reenacted with amendments in 1971. Use of the word "insane" in the old statute is equivalent to the current statute's use of the word "incompetent." This is evidenced by the fact that a finding of "insanity" under that statute led only to a procedural delay in the trial and was not a complete defense to the charge on the merits. In effect then, what the prior statute stated was that an accused was not to be tried when incompetent to stand trial, and the current statutes are in accord. Section 16-8-112, C.R.S.1973.
Consequently, as noted, Gillings was properly found competent to stand trial in August of 1975. Moreover, his insanity as of December 14, 1973, and thereafter, had no bearing on his culpable mental state on October 9, 1973; and thus it was not a defense to the offenses committed on that date, particularly where he was found sane on that date. Therefore, his subsequent plea of guilty on September 24, 1975, entered with advice of counsel after he was found competent, may not be disturbed.
Judgment affirmed.
PIERCE and BERMAN, JJ., concur.