THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RODNEY DANIELS, Defendant-Appellant.

First District (3rd Division)   No. 78-91

Opinion filed September 19, 1979.

James J. Doherty, Public Defender, of Chicago (R.H.R. Silvertrust and John Thomas Moran, Jr., Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Nicholas P. Iavarone, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE RIZZI delivered the opinion of the court:

Defendant, Rodney Daniels, was convicted of murder (Ill. Rev. Stat. 1975, ch. 38, par. 7—1) and sentenced to a term of 20 to 30 years. Defendant contends: (1) he was denied his right to a speedy trial; (2) he was not proved guilty beyond a reasonable doubt; (3) the trial court erred in admitting certain photographs into evidence; and (4) he was denied a fair trial because of statements made during closing argument. We affirm.

Darden Fuller testified that at about 7 p.m. on November 1, 1975, he was in his mother's room in an apartment when he overheard an argument. He walked to the hallway and looked in the living room where he saw defendant pointing a shotgun at Timothy Brown. After Brown called defendant a "punk," defendant replied, "If you come any closer, I will shoot." As Brown took a step towards defendant, the defendant shot him in the forehead, killing him. Defendant then put the shotgun under his coat and ran past Darden Fuller and another witness, Helen Brown. Darden Fuller is decedent's nephew, and Helen Brown is decedent's sister.

Helen Brown's testimony generally corroborates Darden Fuller's testimony. Two police officers testified that they questioned her at the scene immediately after the occurrence. Although she did not mention defendant by name when questioned by the police officers, one officer testified that she said "she knows who he is or would know who he is." At the conclusion of her cross-examination, Helen Brown stated, "All I know is that he [defendant] shot my brother."

Decedent's niece, Monica Fuller, testified that shortly after the shooting, defendant told her that "he thinks he done killed my uncle, he was sorry, he didn't mean to do it, it was an accident * * *." She also testified that defendant repeated the apology and said, "I might as well turn myself in." She replied, "that was my uncle, and I am going to have to tell the police something sooner or later." Five months later, Monica Fuller told police about defendant's admission. She testified that she did not do so earlier because she believed defendant's statement that the shooting was an accident and that he would turn himself in.

Dallas Moore, defendant's brother-in-law, testified that he, the defendant, and two other relatives, went to the race track on the afternoon of the shooting. Acknowledging that they had been drinking heavily, Moore testified that he could not remember the name of the race track. He did recollect, however, that they were running "buggies" at the track, rather than horseback. Moore testified that they returned home between 6:30-6:45 p.m. and watched a particular television program at 7 p.m. He also testified that about 7:15 p.m., David Wicker and Darden Fuller arrived; approximately 10 minutes later, Daniels, Wicker, and Fuller left the house together. Moore's testimony regarding the buggy racing was contradicted by George Lalich, attorney for the Illinois Racing Board. Lalich emphasized that there was no harness (*i.e.*, buggy) racing in Chicago on the afternoon of November 1, 1975. The only harness racing took place in the evening, beginning at 8:20 p.m.

Defendant testified in his own behalf and denied the shooting. He also denied that he told Monica Fuller he shot Timothy Brown.

Defendant contends that he was denied a speedy trial. On November 2, 1975, he was charged with the murder of Timothy Brown. His trial began on July 22, 1976. It ended in a hung jury and a mistrial on July 29, 1976. The second trial began on November 9, 1976. Defendant argues that, under the circumstances, he was denied his statutory (Ill. Rev. Stat. 1975, ch. 38, par. 103—5(a)) and constitutional (Ill. Const. 1970, art. I, §8) right to a speedy trial.

■■ The statute provides that every person in custody for an alleged offense shall be tried within 120 days from the date he was taken into custody unless delay is occasioned by the defendant[1]; otherwise the defendant shall be discharged from custody. (Ill. Rev. Stat. 1975, ch. 38, par. 103—5(a).) The statute, as it existed, does not delineate how computation of the statutory period is made if delay is occasioned by the defendant. However, it is clear that with respect to offenses committed prior to March 1, 1977, delay occasioned by the defendant tolls the running of the statute and a new statutory period commences to run from

---

[1] There are other statutory conditions and qualifications, but they are not relevant here.

the date to which the case has been delayed.[2] *People v. McKinney* (1978), 59 Ill. App. 3d 536, 537, 375 N.E.2d 854, 855.

■■ In the present case, the parties agree that defendant is chargeable with a delay to and including April 1, 1976; the 120-day statutory period would, therefore, run from that date. Defendant's first trial began on July 22, 1976, which is only 112 days from April 1, 1976. Defendant, in effect, contends that although the first trial ended in a mistrial, the 120-day period continued to run without interruption from April 1, 1976. This conclusion would result in absurd consequences, for if the first trial started within the 120-day period but ended after the period had elapsed, the defendant would have to be discharged if the trial ended in a hung jury. Consequently, we cannot construe the statute to mean that if a trial resulted in a disagreement, it should not be regarded as a trial and the defendant discharged. We believe that the right to a discharge under the statute should result from a want of prosecution by the State. The fact that the jury does not agree does not show a want of prosecution. It follows that a defendant is considered to have been tried within the meaning of the statute even though the trial ends in a hung jury. (*Gillespie v. People* (1898), 176 Ill. 238, 242, 52 N.E. 250, 251.) This, of course, does not mean that the accused is not entitled to a speedy retrial. See *People v. Jonas* (1908), 234 Ill. 56, 60, 84 N.E. 685, 686.

The statute does not, by its terms, deal with a mistrial situation. In *Jonas*, the court held that the statutory period begins to run anew from the date of the disagreement of a jury. However, in *People v. Gilbert* (1962), 24 Ill. 2d 201, 204, 181 N.E.2d 167, 169-70, and *People v. Bazzell* (1977), 68 Ill. 2d 177, 181, 369 N.E.2d 48, 49, the supreme court stated that another full statutory period does not begin to run in every instance of a mistrial. In *Gilbert*, the court held that the "overriding consideration is the constitutional right to a speedy trial, and where delay is not attributable to the defendant, that right is not measured by aggregating successive periods" provided in the statute. It appears, therefore, that in the event of a mistrial, the issue is whether a defendant's constitutional right to a speedy trial has been violated rather than whether the second trial commenced within the statutory period. (*Cf. Gilbert*, 24 Ill. 2d 201, 205, 181 N.E.2d 167, 170; *Bazzell*, 68 Ill. 2d 177, 181, 369 N.E.2d 48, 49.) We adopt this principle. But see Justice Dooley's dissenting opinion in *Bazzell*, 68 Ill. 2d 177, 184-86, 369 N.E.2d 48, 50-51.

The constitutional right to a speedy trial cannot be defined in terms of an absolute or precise standard of time within which an accused must

---

[2] With respect to offenses committed on or after March 1, 1977, delay occasioned by the defendant only temporarily suspends for the time of the delay the period in which the defendant is to be tried; a new full statutory period does not begin to run from the date to which the case has been delayed. *People v. McKinney* (1978), 59 Ill. App. 3d 536, 537, 375 N.E.2d 854, 855; Ill. Rev. Stat. 1975, ch. 38, par. 103—5(f).

be given trial. (*People v. Henry* (1970), 47 Ill. 2d 312, 316, 265 N.E.2d 876, 879.) Whether this right has been violated is a judicial question, and following a mistrial, a reasonable time test should be applied. In this regard, the record must be examined in its totality. *Bazzell*, 68 Ill. 2d 177, 181, 369 N.E.2d 48, 49.

■■ In this case, 112 days elapsed from the date defendant was last chargeable with a delay until the start of the first trial. Only 102 days elapsed from the date of the mistrial until the start of the second trial. The record shows that one of the stated reasons the second trial did not start sooner was because the judicious trial judge wanted to give both sides an opportunity to obtain a transcript of the first trial. Further, the record does not show that defendant was prejudiced by the time period between the first and second trial, and that period is not so extensive that prejudice should be presumed. (See *People v. Love* (1968), 39 Ill. 2d 436, 443-44, 235 N.E.2d 819, 823-24; *Henry*, 47 Ill. 2d 312, 316-18, 265 N.E.2d 876, 880.) The general assertion that defendant was prejudiced by the passage of time because it places a burden on his ability to defend is not sufficient to warrant discharge. (*People v. Tetter* (1969), 42 Ill. 2d 569, 577, 250 N.E.2d 433, 437.) Moreover, when we compare the time elapsed between the mistrial and second trial in this case with the time period and the result in other cases that have been reviewed, we cannot presume defendant was prejudiced. (See *Bazzell*, 68 Ill. 2d 177, 369 N.E.2d 48 (131 days between mistrial and start of second trial); *Gilbert*, 24 Ill. 2d 201, 181 N.E.2d 170 (121 days between mistrial and start of second trial).) We hold, therefore, that under the circumstances of this case, defendant was not denied his statutory or constitutional right to a speedy trial.

Defendant next contends that the State did not prove him guilty beyond a reasonable doubt. He argues that the State failed to meet its burden of proof, because the testimony of the State's witnesses is contradicted and inconsistent and because he has an alibi. However, the positive testimony of just one credible witness is sufficient to sustain a conviction even though such testimony is contradicted by the defendant (*People v. Moorehead* (1970), 45 Ill. 2d 326, 329-30, 259 N.E.2d 8, 10), and a jury is not required to accept the exculpatory testimony of the defendant or his witnesses (*People v. Stombaugh* (1972), 52 Ill. 2d 130, 138, 284 N.E.2d 640, 644-45).

■■ In the present case, Darden Fuller and Helen Brown both positively identified defendant as the person who shot the decedent. Although there are some discrepancies and inconsistencies in their testimony, they merely go to the weight that is to be given to the testimony rather than voiding the testimony. (*People v. Henderson* (1976), 36 Ill. App. 3d 355, 367-68, 344 N.E.2d 239, 249-50.) In summary, we find that the evidence is

sufficient to support the jury's conclusion that defendant is guilty beyond a reasonable doubt.

■■ The defendant next contends that the court erred in admitting two photographs into evidence and submitting them to the jury. Defendant claims the photographs were highly inflammatory and of no probative value. One of the photographs, PX #1 ID, was not admitted into evidence and was not taken by the jury into the jury room. The defendant's argument with respect to this photograph is, therefore, obviously baseless. The other photograph shows the decedent lying on the floor after he was shot. It was used by Helen Brown to illustrate and mark her position and Darden Fuller's position at the time of the shooting. Since the position and vantage point of both these eyewitnesses were issues during the course of the trial, the photograph was relevant and admissible in spite of the fact that it may be of a gruesome nature. Questions relating to the character of the evidence offered, and the manner and extent of its presentation, are largely within the discretion of the trial judge, and the exercise of that discretion will not be interfered with unless there has been an abuse to the prejudice of the defendant. (*People v. Speck* (1968), 41 Ill. 2d 177, 202-03, 242 N.E.2d 208, 222, *rev'd on other grounds* (1969), 403 U.S. 946, 29 L. Ed. 2d 855, 91 S. Ct. 2279.) We find no abuse of discretion by the trial judge in this instance. The defendant's argument is, therefore, untenable.

■■ ■ Defendant next contends that he was denied a fair trial because of remarks made by the prosecutor during closing argument. In summarizing the testimony of Dallas Moore and another defense witness, the prosecutor stated: "Would they have reason to fabricate, to take the stand and testify on behalf of Rodney Daniels? I think so." It is clear that a prosecutor in closing argument may call a witness' testimony false, if in so doing, he relies on the evidence and the inferences from it to support his conclusion. (*People v. Sinclair* (1963), 27 Ill. 2d 505, 509, 190 N.E.2d 298, 300; *People v. Owens* (1977), 46 Ill. App. 3d 978, 994, 361 N.E.2d 644, 656.) Each case, of course, must be decided on its own facts. Here, we believe the prosecutor's conclusion that the testimony was fabricated is a reasonable inference based upon evidence. Thus, we reject defendant's contention regarding this comment.

■■ Defendant also complains that the prosecutor committed error in commenting on his failure to call Sharon Jaimson and Ellen Daniels, his wife, as witnesses. Sharon Jaimson allegedly watched a television program with defendant during the time that the shooting occurred. Ellen Daniels was allegedly present in the home during this time. The general rule is that it is improper to comment on defendant's failure to present witnesses when such witnesses are equally accessible to both parties. Where, however, defendant injects his activities with a possible witness

into a case to establish an alibi, his failure to produce such a witness is a proper subject for comment by the prosecutor during his closing argument. (*Owens*, 46 Ill. App. 3d 978, 994, 361 N.E.2d 644, 655-56.) Thus, the comments complained of were not improper.

■■ Defendant also argues that error was committed when the prosecutor commented on defendant counsel's motive in questioning a defense witness regarding the intimacy of Helen Brown and David Wicker. Specifically, defense counsel asked a witness whether he had seen Helen Brown in the same bed with David Wicker. During closing argument, the prosecutor stated that defense counsel asked about their relationship "so that he could dirty her up a little bit * * *. That is why he did it?" We believe defense counsel's question invited some type of response, and we cannot say that the prosecutor's response was improper. It certainly did not deprive defendant of a fair trial. See *People v. Meyers* (1966), 35 Ill. 2d 311, 335-36, 220 N.E.2d 297, 311.

■■ Defendant also claims that prejudicial error occurred when the prosecutor suggested that he lied while testifying. Among other comments, the prosecution called attention to the fact that defendant "had a year to get his testimony down" and that he "is the only person in this entire case that has anything to lose * * *." We do not find that these and similar remarks about which defendant complains were a material factor in defendant's conviction. Thus, based upon the record in this case, even if the remarks were improper, they do not constitute reversible error because they did not result in substantial prejudice to the defendant. *People v. Beller* (1977), 54 Ill. App. 3d 1053, 1059, 370 N.E.2d 575, 579.

■■ In addition, many of the matters about which the defendant now complains regarding the prosecutor's argument to the jury were not objected to at trial. The defendant's complaints were, therefore, waived. (*People v. Martin* (1979), 74 Ill. App. 3d 566, 568, 393 N.E.2d 508, 510.) Defendant's argument that he was denied a fair trial because of remarks made by the prosecutor during closing argument is untenable for the specific reasons stated and because of waiver.

Accordingly, the judgment entered in the trial court is affirmed.

Affirmed.

SIMON, P. J., and McNAMARA, J., concur.