**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Ramon LOPEZ, also known as Jose Apodaca, Defendant-Appellant.**

**No. 80CA0436.**

Colorado Court of Appeals, Div. III.

Jan. 14, 1982.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Susan P. Mele-Serno-vitz, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Bartley & Glover, R. Allan Glover, Pueblo, for defendant-appellant.

BERMAN, Judge.

Defendant appeals his conviction of theft of between $200 and $10,000 and his sentence beyond the presumptive range. We affirm.

As a result of a plea bargain, defendant, on October 31, 1979, entered a guilty plea to a count of theft in exchange for the dismissal of another pending case charging him with aggravated motor vehicle theft. At the time the plea of guilty was entered, the trial court, pursuant to Crim.P. 11, carefully questioned the defendant to ascertain that he understood what rights he was giving up, including those of constitutional dimension. The defendant acknowledged that he understood his rights and still desired to plead guilty. The court also advised the defendant that he was pleading guilty to a class 4 felony, the presumptive range of sentence being two to four years, and that, based on mitigating or aggravating circumstances, he could be punished from one to eight years. Although the then counsel for defendant told the court that he had advised the defendant that in counsel's opinion a valid affirmative defense could be presented to the jury, the defendant still insisted on pleading guilty. Defendant indicated that he understood the court, and thereupon the court, finding the plea of guilty was "a free and voluntary one," accepted the plea.

The court further required that a factual basis for the plea be made a matter of evidence. The factual basis was presented to the court on January 17, 1980, by testimony of the owner of the tavern from which the money had been stolen. The court had before it the probation report indicating previous convictions of the defendant.

In connection with that report, the defendant had told the probation officer that he had never been evaluated for any mental

health problems or admitted to any mental health institution. But, information obtained by the probation department from F.B.I. records revealed that defendant had been declared to be legally insane on March 7, 1972, and had been committed to the Colorado State Hospital and that he was also declared to be legally insane following his being charged with robbery, conspiracy, and escape on May 6, 1977, and had been again committed at that time to the Colorado State Hospital. Nevertheless, the defendant refused the request of the probation department to sign a release of information regarding these matters from the Colorado State Hospital.

Finding extraordinary aggravating circumstances, the court sentenced the defendant to a period of eight years and one year of parole. Prior to the acceptance of the plea of guilty, neither defendant nor his then counsel had indicated in any way that the defendant was incompetent to stand trial or that, indeed, he had ever been confined in the Colorado state institution as a result of a finding of insanity. The court, however, by then made aware of the two previous instances of confinement to the Colorado State Hospital, made note of these earlier commitments at the time of the sentencing.

The court specifically noted the granting of a conditional release of the defendant from the state hospital on May 29, 1979, and the conditions of the release, among which was that the defendant had to continue the use of monitored antabuse and remain in contact with Alcoholics Anonymous and that he abstain from the use of all intoxicants. It then found that the defendant had violated these conditions of his release from the state hospital. The court further noted that the instant offense was committed less than three months after his conditional release.

At the conclusion of the announcement of sentence there was further colloquy with the court as defendant's counsel and defendant attempted to have the court change its sentence. When this failed, defendant asked for leave to withdraw his plea of guilty and enter a plea of not guilty, which request was denied.

## I.

Defendant first contends that the trial court erred in not raising the issue of defendant's "insanity" *sua sponte.* We disagree that under the facts here the trial court was itself required to enter a plea of not guilty by reason of insanity for defendant, either before the original plea of guilty was accepted or thereafter.

Prior to the time of the acceptance of the plea of guilty there was no basis for the trial court to have any knowledge of the defendant's previous hospitalization for insanity. Neither defendant nor his then counsel had indicated in any manner that defendant was insane or had previously been committed.

If defendant's argument now is that after the probation report was before the trial court, the court at that time was required, *sua sponte*, to enter a plea of not guilty by reason of insanity, we also disagree. "[N]either Crim.P. 11(e) nor section 16–8–103, [C.R.S.1973 (1978 Repl. Vol. 8)] gives the trial court the authority to enter a plea of not guilty by reason of insanity when it has not been requested by the defendant or his counsel." *Labor v. Gibson,* 195 Colo. 416, 578 P.2d 1059 (1978).

After the probation report was before the trial court, it questioned the defendant why he would not sign an authorization for the probation department to obtain his hospital records. The defendant responded: "These are personal medical records that I just feel that they are better left alone."

The Supreme Court, in *Labor v. Gibson, supra,* further pointed out "a defendant may strategically decide not to enter a plea of not guilty by reason of insanity, due to the possible greater length of confinement . . . ." The tactical choice of whether to enter a plea of not guilty by reason of insanity by a defendant found "mentally competent," which in essence the trial court here found, is left to the defendant and his counsel. Since there was no indication in

the record that his then counsel knew of defendant's previous adjudication of insanity, it is obvious to us that the defendant himself made this "tactical choice." *Labor v. Gibson, supra.*

## II.

Defendant apparently concludes that because of his previous adjudication of insanity there was sufficient cause before the trial court obligating it to raise the issue of competency on its own initiative even though not previously raised by defendant or his counsel. Section 16–8–110, C.R.S. 1973 (1978 Repl. Vol. 8); *see* Crim.P. 11(b). We disagree.

█ The People concede, and we agree, that "an incompetent person cannot waive his constitutional rights and that a trial judge must carefully safeguard such rights should the judge have a reasonable doubt as to a criminal defendant's competency." *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). From this premise, defendant argues that because of his prior adjudication of insanity there is a continuing presumption of insanity and that the trial court erred in not permitting a withdrawal of the plea of guilty. We disagree.

█ We note that "insane persons are, under the law, not necessarily incompetent to stand trial because of the fact of their insanity." *People v. Gillings,* 39 Colo.App. 387, 568 P.2d 92 (1977). And, in its last report, dated December 1, 1978, the Colorado State Hospital recommended a conditional release of defendant based upon its opinion that: "Mr. Lopez no longer suffers from a mental disorder that is likely to cause him to be dangerous to himself, to others, or to the community in the reasonably foreseeable future." It was upon this recommendation that the district court approved the conditional release of the defendant. And, as the trial court here noted, the offense for which the defendant was charged was committed less than three months after that release. This finding by the Colorado State Hospital and release by the district court serves the purpose of releasing the defendant as no longer suffering from a mental disease or defect. Section 16–8–116, C.R.S. 1973 (1978 Repl. Vol. 8). *See also* Colo.Sess. Laws 1981, Ch. 193, § 16–8–115.5 (effective July 1, 1981). It also serves the purpose of proving that the "presumptive continuation of a state of mental incapacity" still existing had been overcome and that sanity had been restored. *See People v. Chavez,* Colo., 629 P.2d 1040 (1981).

Furthermore, as the People pointed out, and our reading confirms, the record reveals that the defendant was articulate not only in responding to the trial court's questions but also personally made an able argument and filed a *pro se* motion in mitigation of sentence based upon a legal principle which was thereafter the subject of our opinion in *People v. Gonzales,* Colo.App., 613 P.2d 905 (1980). And, as a result of the defendant's oral argument and *pro se* motion, the trial court did amend its findings of the sentencing hearing.

Although, in *People v. Gonzales, supra,* we held that a trial court in sentencing a defendant could consider his previous criminal record as extraordinary mitigating or aggravating circumstances so as to justify a sentence in excess of the presumptive range, this does not detract from the defendant's able argument to the contrary to the trial court at a time when the issue was still undecided. Thus, under the facts here, there was no basis for the trial court to have "reason to believe" the defendant was incompetent to stand trial. Section 16–8–110(2)(a), C.R.S.1973 (1978 Repl. Vol. 8).

## III.

█ Finally, defendant argues that the trial court should not have considered his prior criminal record as extraordinary aggravating circumstances to justify his sentence in excess of the presumptive range. This issue has been decided otherwise. *People v. Gonzales, supra.*

Judgment of conviction and sentence affirmed.

KELLY and KIRSHBAUM, JJ., concur.